[No. B163311. Second Dist., Div. Two. Nov. 25, 2003.]

BEVERLY JEWETT, Plaintiff and Appellant, v.
CAPITAL ONE BANK et al., Defendants and Respondents.

---

## COUNSEL

Law Offices of Barry L. Kramer and Barry L. Kramer for Plaintiff and Appellant.

Morrison & Foerster, John W. (Jack) Alden, Jr.; Morrison & Foerster, James F. McCabe, James R. McGuire and Amy B. Lovell for Defendants and Respondents.

---

## OPINION

**NOTT, Acting P. J.**—Appellant Beverly Jewett appeals from an order of the trial court granting a special motion to strike under Code of Civil Procedure section 425.16[1] in favor of respondents Capital One Bank and Capital One, F.S.B. We are asked to determine whether credit card solicitations are acts of free speech in connection with a public issue, and therefore subject to the anti-SLAPP (strategic lawsuit against public participation) provisions of section 425.16. We hold that they are not and reverse the order of the trial court granting the special motion to strike.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

## CONTENTIONS

Appellant contends that the trial court erred (1) in finding that credit card solicitations constitute speech in connection with an issue of public interest; (2) in finding as a matter of law that the solicitations were not misleading; (3) in finding that appellant had not met her burden of establishing the merits of the complaint under section 425.16; and (4) by abusing its discretion in permitting respondents to bring an untimely motion to strike.

## FACTS AND PROCEDURAL HISTORY

### The complaint

On July 6, 2001, appellant and Jim Moana[2] filed a class action complaint against Capital One Bank; Capital One, F.S.B.; and Capital One Financial Corporation[3] for: (1) deceptive business practices (Civ. Code, § 1770) and (2) unfair business practices (Bus. & Prof. Code, § 17200).

The complaint alleges the following. Respondents offered "pre-approved" credit cards or "Gold" credit cards with a credit line up to $2,000, but actually issued open-ended unsecured personal credit agreements having a credit limit of $200 or less. Despite having only a $200 credit limit, these cards incurred the same (or greater) monthly or annual charges (and other fixed fees such as late and over-limit fees) as the card the consumer was offered in the original solicitations. ·

These practices are misleading because the solicitations "contain a personalized invitation using the name of the specific individual, repeatedly use the words 'pre-approved' with regard to the credit card being offered, repeatedly refer to a $2,000 amount while printing the amount '$2,000' in large, bold face type, uses the phrase 'Pre-approved Credit Line Up to $2,000' or similar wording, offers 'CONGRATULATIONS!', indicates a specific 'Reservation' number and 'Access Code' for the credit card, and describes multiple uses which would be totally unrealistic for a card that only carries a $200 credit limit." The personalized solicitation uses the word "pre-approved" 15 times, the word "Gold" 19 times, and the phrase "up to $2,000" five times. Only once does the fact that the credit line may be as low as $200 appear, tucked away in fine print on the back of the solicitation letters, in what appears to be a preprinted form disclosure.

As an alternative to the above described solicitations, respondents sent out solicitations personally directed to a specific individual. The solicitations

---

[2] Moana is not a party to this appeal.

[3] Capital One Financial Corporation was dismissed from the action and is not a party to this appeal.

repeatedly use the words "pre-approved" with regard to the credit card being offered; repeatedly emphasize that the card being offered is a preapproved "Gold" credit card; print the word "Gold" in large, bold type; indicate a specific "Reservation number and Access Code" for the credit card; and describe benefits such as "financial flexibility" and "financial freedom" that would be unrealistic in relation to a card that carries a $200 credit card limit. The solicitations use the word "pre-approved" in six places and the word "Gold" appears no less than 17 times. The fact that the credit line may be as low as $200 is not mentioned.

These misleading offers are designed to (1) deceive consumers as to the level of credit they have been approved for and are being offered; (2) induce consumers to apply for credit cards for which they would not apply if they were aware that they would receive a credit card with substantial fees and only a $200 credit limit; (3) induce consumers to apply for credit cards for which the amount of charges and fees are unfair and disproportionately high compared to the amount of credit that is granted; and (4) generate income for respondents in the form of fees and charges which are completely disproportionate to the amount of credit advanced by respondents.

As to the first cause of action for deceptive business practices, the complaint alleged that the solicitations sent to each class member resulted in the sale of credit services to each such consumer within the meaning of the Consumers Legal Remedies Act (Civ. Code, § 1750). These solicitations constituted unfair and deceptive acts, by representing that such credit services had uses, characteristics, benefits and quantities that they did not have (Civ. Code, § 1770, subd. (a)(5)); by representing that such credit services were of a particular standard, quality, or grade when they were not (Civ. Code, § 1770, subd. (a)(7)); and by advertising for the services while intending not to sell them as advertised (Civ. Code, § 1770, subd. (a)(9)).

The complaint sought an order under Civil Code section 1780, subdivision (a)(2), enjoining respondent from (1) sending further solicitations of unsecured personal credit described as "pre-approved" which offer a credit line "up to" a specific dollar amount, and then issuing a credit card with the lower dollar credit limit, and (2) sending any further solicitations of unsecured personal credit described as "pre-approved" which offer a "Gold" credit card, and then issuing a credit card with a credit limit of less than $500.

Although the complaint alleged that appellant and other members of the class suffered damages in the form of fees and charges in an amount according to proof at trial, the complaint did not seek damages under that cause of action. The complaint alleged that appellant intended to file an amended complaint under Civil Code section 1782, subdivision (d), seeking

damages, restitution and punitive damages under Civil Code section 1780, subdivision (a)(1), (3) and (4).

As to the second cause of action for unfair business practices, the complaint alleged that the credit card solicitations induced appellant and plaintiff class members to enter into credit card agreements with respondents, constituting unfair, misleading and deceptive advertising (Bus. & Prof. Code, § 17500).

### The motion to strike

On August 27, 2001, respondents removed the action to federal court. Pursuant to a stipulation filed on September 27, 2001, the action was ordered remanded to state court. On January 11, 2002, respondents filed a special motion to strike under section 425.16. The trial court issued its ruling granting the motion to strike on September 24, 2002, finding that the action fell within the class of suits subject to a special motion to strike. The trial court also found that appellant failed to establish a probability that she would prevail on the merits of the complaint because the solicitations complied with federal regulations; the statements in the solicitations were not misleading; the survey attached to appellant's declaration was seriously flawed; and appellant failed to produce any admissible evidence that any person who responded to the ad was given credit of less than $2,000.

Appellant filed a timely notice of appeal on November 25, 2002. On February 26, 2003, the trial court awarded respondents $40,778.55 in fees and costs under section 425.16, subdivision (c).[4]

### DISCUSSION

I. *Section 425.16*

Section 425.16 permits a court to dismiss certain nonmeritorious claims in the early stages of the lawsuit. (*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087 [114 Cal.Rptr.2d 825].) These SLAPP suits "are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 816 [33 Cal.Rptr.2d 446] (*Wilcox*), disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5 [124 Cal.Rptr.2d 507,

---

[4] Section 425.16, subdivision (c) provides, in pertinent part: "In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."

52 P.3d 685].) Under section 425.16, subdivision (b)(1), "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

■ In determining whether to grant or deny a section 425.16 motion to strike, the court engages in a two-step process. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*).) First, the court must decide whether the defendant has met his or her threshold burden of showing that his or her acts arose from protected activity. (§ 425.16, subd. (b)(1); *Navellier,* at p. 88.) These acts include (1) written or oral statements made before a legislative, executive, or judicial proceeding; (2) written or oral statements made in connection with an issue under consideration or review by a legislative, executive, or judicial body; (3) written or oral statements made in the place open to the public or in a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest. (§ 425.16, subd. (e).)

■ Thus, if the speech is made or the activity is conducted in an official proceeding authorized by law, it need not be connected to a public issue. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117 [81 Cal.Rptr.2d 471, 969 P.2d 564].) But if it is made or conducted apart from an official proceeding, then there is a public issue requirement. (*Ibid.*)

■ If the defendant meets his or her burden of showing that the activity is protected, then the court determines whether the plaintiff has carried his or her burden of showing that there is a probability that he or she will prevail on the claim. (§ 425.16, subd. (b)(1); *Navellier, supra,* 29 Cal.4th at p. 88.)

■ On appeal, we independently review whether section 425.16 applies and whether the plaintiff has a probability of prevailing on the merits. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 [113 Cal.Rptr.2d 625].)

II. *Whether the credit card solicitations fall within the ambit of section 425.16*

Respondents rely heavily on *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562 [92 Cal.Rptr.2d 755] (*DuPont*) in support of their argument that the complained of speech was made in

connection with a public issue or an issue of public interest. We conclude, however, that *DuPont* is factually inapposite to the type of commercial speech implicated here, and that the credit card solicitations do not fall within the ambit of section 425.16.

In *DuPont*, the plaintiffs alleged that DuPont made false statements before regulatory bodies, the medical profession, and to the public in connection with one of its pharmaceutical products, Coumadin, used as a blood thinner. The court found that DuPont's lobbying and other activities aimed at regulatory and legislative bodies fell within the first part of section 425.16, subdivision (e), written or oral statements or writings made in connection with an issue under consideration or review by a legislative, executive or judicial body. Pertinent to our case, however, is the court's inquiry into allegedly false and misleading information about the generic form of Coumadin, warfarin sodium, disseminated by DuPont to the public, as well as false statements allegedly made in press releases, Internet bulletins and public statements sought to be protected by DuPont under the fourth part of section 425.16, subdivision (e). In concluding that the statements regarding Coumadin and its generic counterpart pertain to "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" under the fourth part of section 425.16, subdivision (e), the court pointed to the complaint's allegation that: " 'More than 1.8 million Americans have purchased Coumadin, an anti-coagulant medication, for the prevention and treatment of blood clots that can lead to life-threatening conditions such as stroke and pulmonary embolism.' " (*Dupont, supra,* 78 Cal.App.4th at p. 567.) The court concluded that since "the number of persons allegedly affected and the seriousness of the conditions treated established the issue as one of public interest . . . the first prong of the anti-SLAPP statute has been satisfied." (*Ibid.*)

We find instructive a series of cases published within the last year that held that certain commercial speech was not protected under the anti-SLAPP statute. In *Consumer Justice Center v. Trimedica International, Inc.* (2003) 107 Cal.App.4th 595 [132 Cal.Rptr.2d 191] (*Consumer Justice Center*), the Fourth District held that literature touting a purported herbal breast enhancing product, Grobust, did not constitute speech on a matter of public interest within the meaning of section 425.16. Reasoning that the speech concerned not herbal supplements in general, but commercial speech about the specific properties and efficacy of a particular product, the court held that the speech was not a matter of general public interest within the meaning of the statute. The court distinguished *DuPont* on the basis that Grobust, as opposed to Coumadin, is not widely used, does not treat life-threatening conditions, and does not qualify as a matter of public interest by the number of persons allegedly affected or the seriousness of the conditions treated. (*Consumer*

*Justice Center,* at p. 602.) Finally, the court concluded that the intent of the anti-SLAPP statute to encourage continued participation in matters of public significance is not forwarded by "specific advertising statements about a particular commercial product, absent facts which surely make that product a matter of genuine public interest." (*Ibid.*) According to the court, to so hold would allow every defendant in every false advertising case to bring a special motion to strike under the anti-SLAPP statute. (*Ibid.*)

The Fourth District, in *Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39 [134 Cal.Rptr.2d 420] (*Nagel*), held that Twin Laboratories' product labels and Web site listing of the ingredients of its nutritional and dietary supplements, contained in its product Ripped Fuel, were not protected speech in connection with a public issue within the meaning of section 425.16. The court recognized that commercial speech is entitled to protection, but less than that afforded to other constitutionally safeguarded forms of expression because (1) it is easier to verify the truth of commercial speech, so governmental regulation is less likely to chill the dissemination of accurate and nondeceptive speech; (2) commercial speakers act for profit motives and therefore commercial speech is less likely to be abandoned due to governmental regulation; and (3) the government has the authority to regulate commercial transactions and commercial speech to prevent harm to the consumer. (*Nagel,* at pp. 46–47.) Thus, the court rejected Twin Laboratories' argument that the constitutional right of free speech was implicated. Moreover, while matters of health and weight management are of interest to the public, advertisers should not be permitted to immunize false or misleading product information by including references to public issues, in order to further their private interest of increasing sales for their products. (*Id.* at pp. 47–48.)

The court distinguished *DuPont* on the basis that *DuPont's* advertising was "inextricably intertwined with speech providing medical information to the consuming public and medical doctors, and with speech furthering its political lobbying activities." (*Nagel, supra,* 109 Cal.App.4th at p. 50.) In contrast, the product labels and Web site information promoted by Twin Laboratories were not intertwined with any political, noncommercial speech.

In *Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26 [1 Cal.Rptr.3d 390] (*Commonwealth Energy*), the Fourth District held that a telemarketing pitch promoting a firm selling information was not made in connection with a public issue or an issue of public interest. There, callers promoted the company's investigatory services regarding telemarketing calls, for a membership fee. Citing *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924 [130 Cal.Rptr.2d 81], the court recognized that three

general categories of cases have fallen under the "connection with the public issue" prong. A public issue is implicated if the subject of the statement or activity underlying the claim (1) was a person or entity in the public eye; (2) could affect large numbers of people beyond the direct participants; or (3) involved a topic of widespread, public interest. (*Commonwealth Energy*, at p. 33.)

The court found that while investment scams generally might affect large numbers of people, the speech implicated there "was a telemarketing pitch for a particular service marketed to a very few number of people." (*Commonwealth Energy, supra,* 110 Cal.App.4th at p. 34.) The telemarketing speech was not a disquisition on investment scams in general, and therefore could not be said to be about an issue of widespread public interest. Nor did the general importance of consumer information cause this sales pitch to implicate an issue of public interest. (*Ibid.*) The court also distinguished *DuPont* on the basis that the case before it involved merely a commercial service offered to a small group of sophisticated investors who had already invested in one firm and concerned the defendant's product, rather than the plaintiff's product.

Here, the parties do not dispute that the issue before us is whether the credit card solicitations fall within the category of free speech in connection with a public issue or an issue of public interest under the fourth part of section 425.16, subdivision (e). It is clear that legislative, executive, judicial or public forums are not involved, and therefore, parts one, two, or three of section 425.16, subdivision (e)(1), (2) or (3) do not apply. We find that to extend the protection of section 425.16 to credit card solicitations would subvert the intent of the Legislature in enacting section 425.16, which was to short-circuit suits filed for the purpose of deterring activists and other citizens from exercising their constitutional right to speak and petition the government for redress of grievances. (§ 425.16, subd. (a); *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1363 [102 Cal.Rptr.2d 864].)

While the *DuPont* court determined that the criticized statements pertained to a matter of public interest due to the widespread usage of Coumadin and the seriousness of the condition that it treats, the credit card solicitations at issue are specifically directed to a target audience of consumers with the sole purpose of inducing them to enter into credit agreements with respondents. It is true that millions of Americans use credit cards. However, no lobbying or educational activity figures here, as in *DuPont*, and the attempt to connect the solicitations with an issue of public interest is tenuous at best. Respondents argue that *DuPont* held that where allegations of the complaint assert that the defendant engaged in commercial speech such as advertising, the complaint's cause of action arises from the defendant's protected speech activity, and

section 425.16 applies. *DuPont* makes no such broad assertion—as we have explained, the *DuPont* case involved speech inextricably intertwined with lobbying and political activities aimed at a large segment of the population faced with life-threatening illnesses.

The trial court's reasoning that commercial speech is protected under the First Amendment and that "[c]onsumer credit is essential in the present economy and providing information about consumer credit is an issue of public interest" is untenable. As explained in *Nagel*, commercial speech is subject to limited protection. (*Nagel, supra,* 109 Cal.App.4th at pp. 46–47.) There is no indication that respondents' solicitations were designed to inform the public of an issue of public interest, despite respondents' arguments that the solicitations affect large numbers of people and provide "important, specific, and detailed information on serious matters." ■ We find that the solicitations were designed solely for the purpose of commercial activity, and that to allow such solicitations the protection of section 425.16 by virtue of the fact that they touch upon matters of general public interest would eviscerate the unfair business practices laws. We hold that the credit card solicitations at issue do not implicate matters of public interest and therefore do not qualify for protection under section 425.16.[5]

---

[5] We note that on September 6, 2003, a bill was approved enacting section 425.17 effective January 1, 2004, which provides, in pertinent part: "(a) The Legislature finds and declares that there has been a disturbing abuse of Section 425.16, the California Anti-SLAPP Law, which has undermined the exercise of the constitutional rights of freedom of speech and petition for the redress of grievances, contrary to the purpose and intent of Section 425.16. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process or Section 425.16. [¶] . . . [¶] (c) Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services, including, but not limited to, insurance, securities, or financial instruments, arising from any statement or conduct by that person if both of the following conditions exist: [¶] (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services. (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer, or the statement or conduct arose out of or within the context of a regulatory approval process, proceeding, or investigation, except where the statement or conduct was made by a telephone corporation in the course of a proceeding before the California Public Utilities Commission and is the subject of a lawsuit brought by a competitor, notwithstanding that the conduct or statement concerns an important public issue." (§ 425.17, added by Stats. 2003, ch. 338, § 1.)

It appears that under section 425.17, the credit card solicitations at issue would not be protected by section 425.16.

Nor are we convinced otherwise by respondents' footnoted citation to dicta in *Wilcox, supra,* 27 Cal.App.4th at page 822, footnote 6, in support of its argument that section 425.16 applies to commercial speech. *Wilcox* predates *DuPont, Consumer Justice Center, Nagel* and *Commonwealth Energy*, cases which we find to be on point and persuasive.

We hold that the trial court erred in granting respondents' motion to strike. Because of our conclusion that credit card solicitations do not qualify for protection under section 425.16, we need not address appellant's contention that the trial court abused its discretion in permitting respondents to bring an untimely motion to strike. Further, having concluded that respondents failed to carry their burden of showing that their acts arose from protected activity, we need not address the issue of whether appellant has a probability of prevailing on the merits. Finally, we decline respondents' invitation to affirm the trial court's order on the alternate ground that the complaint is legally insufficient.

## DISPOSITION

The order of the trial court granting the motion to strike is reversed. Appellant shall receive costs of appeal. The matter is remanded to the trial court for consideration of an award of fees and costs to appellant.

Doi Todd, J., and Ashmann-Gerst, J., concurred.

A petition for rehearing was denied December 22, 2003, and the opinion was modified to read as printed above.