[No. B210884. Second Dist., Div. Six. Apr. 16, 2009.]

WORLD FINANCIAL GROUP, INC., Plaintiff and Respondent, v.
HBW INSURANCE & FINANCIAL SERVICES, INC., et al., Defendants
and Appellants.

## COUNSEL

Davis Wright Tremaine, John P. LeCrone, Mary H. Haas and Rochelle L. Wilcox for Defendants and Appellants.

Seyfarth Shaw, Erik B. von Zeipel, Daniel R. Sable and Brian T. Ashe for Plaintiff and Respondent.

## OPINION

**PERREN, J.**—Defendants HBW Insurance & Financial Services, Inc. (HBW), and six of its agents[1] appeal the denial of their motion to strike the complaint filed against them by World Financial Group, Inc. (WFG), pursuant to Code of Civil Procedure section 425.16, the anti-SLAPP statute (strategic lawsuit against public participation).[2] The complaint primarily alleges that defendants, WFG's direct competitors, misappropriated WFG's trade secrets and utilized confidential information to solicit WFG's associates and customers. The trial court denied the motion on the ground that defendants failed to make a prima facie showing that the complaint arose from protected activity. We affirm.

### FACTS AND PROCEDURAL HISTORY

#### The Parties

WFG is a corporation that provides insurance, pension, and financial services to businesses and individuals in the United States and Canada. HBW is WFG's direct competitor. Defendants Dominique Moore, Terry Kennedy, Gabriel Paredes, and Jaime Paredes (hereinafter collectively referred to as the contracting defendants) are all former associates at WFG offices in California and Nevada who are now agents for HBW.[3] Defendants Jeff Crawford and James Crawford are HBW agents at offices in California.

#### The Associate Membership Agreement

In securing employment with WFG, each contracting defendant executed an AMA.[4] Included in the AMA are nine covenants, six of which are particularly relevant here. In section D(2), the contracting defendants agree that during the term of the AMA and for a period of two years thereafter they shall refrain from inducing any of their WFG customers "to terminate, reduce coverage under or replace any of the Products and Services which have been

---

[1] The individual defendants are Dominique Moore, Terry Kennedy, Gabriel Paredes, Jaime Paredes, Jeff Crawford, and James Crawford.

[2] All further undesignated statutory references are to the Code of Civil Procedure.

[3] WFG notes that while its associates sometimes refer to themselves as "agents," the correct term is "associate" under the associate membership agreement (AMA). HBW refers to those who hold the same position in their company as agents.

[4] Defendants Moore and Kennedy executed their AMA's with WFG's predecessor in interest, World Marketing Alliance, Inc. (WMA). Aside from references to WMA instead of WFG, the two AMA's are identical for purposes relevant here.

sold by the Associate or his/her Downline Associates."[5] Section D(3) provides the associate shall not induce any other WFG associates or employees to terminate their relationship with WFG during the same period or "hire, induce or attempt to hire or induce any such persons to sell or solicit products and services which are competitive with the Products and Services for any person or entity other than WFG."

In section D(4), the associate promises not to "use, disseminate or reveal, other than on behalf of WFG as authorized by WFG . . . any confidential information or trade secrets of WFG . . . , which the Associate has or hereafter receives, including any Customer or list of WFG associates, whether obtained from WFG or any other person, or compiled by or on behalf of the Associate; provided, however, that confidential information does not include information which becomes generally available to the public other than as a result of disclosure by the Associate or any member of WFG's network of contractually affiliated sales associates." The associate also agrees that upon termination of the AMA he or she will immediately return all documents containing WFG's confidential information or trade secrets. "Confidential information" is defined as "any and all confidential and proprietary data and information created by or belonging to WFG which has value to and are not generally known by the competitors or potential competitors of WFG now or hereafter acquired or disclosed to the Associate."

Section D(5) generally provides that during the term of the agreement the associate will not solicit other WFG associates to purchase any products or services other than WFG's. In section D(6), the associate acknowledges (1) that all other WFG associates have executed identical or similar agreements, and (2) that any act seeking to induce another associate to breach any term of his or her AMA would constitute wrongful interference with WFG's contractual rights.

### The Complaint

On June 18, 2008, WFG filed a first amendment complaint against defendants alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, violation of the Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.) and the unfair competition law, intentional and negligent interference with prospective economic advantage,

---

[5] A downline associate is defined in the AMA as "[a]ny associate of WFG upon whose sale, fees or revenue production Associate is entitled to earn Override Compensation." While not expressly stated, it appears that a downline associate is one who was recruited by another associate to join WFG.

and unjust enrichment.[6] The complaint alleges that from November 2007 through February 2008, WFG discovered the contracting defendants were using WFG's confidential information and trade secrets, including associate and customer lists as well as sales and marketing information and documents, to solicit WFG agents to leave WFG and join HBW. WFG further alleges the contracting defendants "continue to use WFG proprietary and confidential information" notwithstanding the fact that each of them received a letter demanding that they cease and desist doing so, and "continue to induce or attempt to induce WFG's clients to terminate or reduce coverage under or replace products and services selected, approved and designated by WFG."

Jeff Crawford and James Crawford are named as defendants on all causes of action other than breach of contract and breach of the implied covenant, on the allegation that they "are aiding and abetting" the contracting defendants in soliciting WFG associates and customers and in using WFG's confidential information and trade secrets. The complaint refers to a telephonic conference call that took place on April 18, 2008, during which Jeff Crawford invited several WFG associates to join HBW. Attached to the complaint is a copy of a "flyer" that was sent to the associates that contains a comparison of HBW and "Company B," which was subsequently identified as WFG. The complaint further alleges that defendants Kennedy and Moore actively participated in the call with Jeff Crawford's knowledge. As to James Crawford, the complaint specifically alleges that he attempted to recruit four WFG associates and represented to one of them that WFG was for sale. James Crawford also forwarded a "PowerPoint" presentation to associates that contains information about WFG's commission structure and other information that was designed to persuade the associates to join HBW. A copy of this presentation is attached as an exhibit to the complaint.

In the prayer for relief, WFG seeks to enjoin defendants from using or disclosing WFG's confidential information and trade secrets and to compel them to return all documents containing such information or trade secrets. WFG also seeks to enjoin defendants from any further solicitation of WFG associates or customers "to the extent such business practices violate the agreements, covenants and business practices sought to be protected by this Complaint." The complaint also seeks general and punitive damages.

### The Anti-SLAPP Motion

On August 13, 2008, defendants filed their motion to dismiss the complaint as a SLAPP suit pursuant to section 425.16. Defendants contended that all of

---

[6] Also named as defendants are Zanna Curry and Lori Wagner, both former WFG associates who now work for HBW. These defendants did not participate in the anti-SLAPP motion, and therefore are not parties to this appeal.

WFG's claims were based on defendants' speech and conduct in furtherance of the exercise of their right of free speech in connection with a public issue, as contemplated by subdivision (e)(4) of section 425.16. Specifically, defendants asserted that their speech and conduct involved "the pursuit of lawful employment pursuant to Bus. & Prof. § 16600" as well as "workforce mobility and free competition," all of which are matters "of public interest and protected public policy." Defendants further argued that WFG could not show a likelihood of prevailing on the merits because the covenants of the AMA they allegedly violated were void under Business and Professions Code section 16600. Defendants also claimed WFG could not establish that any of them had improperly used WFG's confidential information or trade secrets. In support of the motion, each defendant submitted a declaration denying all of the allegations against them in the complaint.

In opposing the motion, WFG argued that defendants had failed to satisfy the first prong of the anti-SLAPP statute because, among other things, "[the] complaint involves private conduct, done in a non-public forum, resulting in the violation of a private contract and unfair misappropriation of WFG's confidential trade secret information." WFG also asserted the communications at issue were exempt from the anti-SLAPP statute under section 425.17, subdivision (c). Finally, WFG claimed it would prevail on all of its claims, and offered supporting declarations and documentation.

Defendants filed a reply to WFG's opposition in which they reiterated their previous argument as to how the communications giving rise to the complaint involved a matter of public interest. In challenging WFG's contention that its claims fell within the commercial speech exception to the anti-SLAPP statute as contemplated by section 425.17, subdivision (c), defendants asserted among other things that "Plaintiff is not challenging the content of the statements made but rather the very fact such communications occurred . . . ."

After a hearing, the court found that defendants had failed to meet their burden of proving that the conduct and communications upon which WFG's claims were based involved a matter of public interest, as required by section 425.16, subdivision (e)(4). Accordingly, the motion was denied. This appeal followed.

## DISCUSSION

### I.

*Section 425.16*

Defendants contend their anti-SLAPP motion should have been granted because (1) they met their burden of establishing that the complaint arose

from protected activity, and (2) WFG failed to demonstrate a likelihood of succeeding on the merits of any of its claims. We agree with the trial court that defendants failed to meet their burden of proof on the so-called "first prong" of the anti-SLAPP statute, i.e., that WFG's complaint is based on acts in furtherance of defendants' free speech rights. The burden thus never shifted to WFG to show a probability of prevailing on the merits, and the motion was properly denied.

The anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) We review the trial court's ruling on an anti-SLAPP motion de novo. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 [46 Cal.Rptr.3d 638, 139 P.3d 30]; *Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 35 [64 Cal.Rptr.3d 348].) In undertaking our review, we construe section 425.16 broadly. (§ 425.16, subd. (a).)

A defendant who files an anti-SLAPP motion bears the threshold burden of showing that the complaint arises from protected activity. (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315 [86 Cal.Rptr.3d 288, 196 P.3d 1094].) If the defendant is able to make that showing, the burden shifts to the plaintiff to show a probability of prevailing. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965 [12 Cal.Rptr.3d 54, 87 P.3d 802]; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76 [124 Cal.Rptr.2d 519, 52 P.3d 695].)

For our purposes, the anti-SLAPP law applies to claims "arising from" speech or conduct "in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest." (§ 425.16, subds. (b)(1), (e)(4).) "As courts applying the anti-SLAPP statute have recognized, the 'arising from' requirement is not always easily met. [Citations.]" (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66 [124 Cal.Rptr.2d 507, 52 P.3d 685].) A claim does not arise from constitutionally protected activity simply because it is triggered by such activity or is filed after it occurs. (*City of Cotati v. Cashman, supra,* 29 Cal.4th at pp. 76–78.) Rather, the focus is on the substance of the lawsuit. "[T]he critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.]" (*Id.* at p. 78.) In other words, " ' "the act underlying the plaintiff's cause" or "the act which forms the basis for the plaintiff's cause of action" must *itself* have been an act in furtherance of the right of petition or

free speech.' [Citation.]" (*Equilon, supra,* at p. 66.) To determine whether the "arising from" requirement is met, we look to "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); see *Equilon, supra,* at p. 67.)

We agree with the trial court that none of the claims in WFG's complaint are subject to dismissal under section 425.16. All of the allegedly wrongful conduct and speech that plaintiffs attribute to defendants was committed in a business capacity, and was directed at a competitor's associates and customers for the sole purpose of promoting the competing business as a superior employer and provider of products and services. In asserting otherwise, defendants erroneously identify generalities that might be derived from their speech rather than the specific nature of what they actually said and did. Their focus on specific statements for the first time on appeal comes too late, and in any event the statements they identify are not of interest to the public and are essentially irrelevant to all of WFG's claims. Even if defendants could establish that this speech was protected, it was merely incidental to the conduct upon which the complaint is based and is therefore insufficient to trigger the requirements of the anti-SLAPP statute.

In the trial court, defendants argued that the speech and conduct giving rise to WFG's claims was protected activity because "the pursuit of lawful employment pursuant to Bus. & Prof. § 16600" and "workforce mobility and free competition" are matters "of public interest and protected public policy." They made no mention of the actual content of the communications at issue, and acknowledged WFG "is not challenging the content of the statements made but rather the very fact such communications occurred . . . ." On appeal, however, defendants add new arguments that focus on the specific content of the speech. Because these arguments were not raised below, they are waived. (*Martinez v. Scott Specialty Gases, Inc.* (2000) 83 Cal.App.4th 1236, 1249 [100 Cal.Rptr.2d 403].)[7]

---

[7] For the first time on appeal, defendants request judicial notice of several blogs, Internet articles, and Web sites purporting to demonstrate that the content of the communications at issue here involve a matter of public interest. According to defendants, we must judicially notice those materials pursuant to Evidence Code section 459, subdivision (a)(2). Defendants are incorrect. While the statute they refer to requires us to judicially notice documents *that were actually noticed in the trial court,* it does not compel us to notice matters that were not offered below. Moreover, defendants fail to offer a good reason why these documents should be considered for the first time on appeal. Although we review the trial court's ruling on a SLAPP motion de novo, our task is to determine whether defendants demonstrated *to the trial court* that the lawsuit arises from protected activity. The documents for which judicial notice is requested relate to an argument that was not made below, i.e., that the specific content of defendants' speech involves a matter of public interest. In any event, the materials are irrelevant because we ultimately conclude that defendants' specific references to WFG's business practices are merely incidental to WFG's claims. Defendants' request for judicial notice of the documents is therefore denied. We also deny defendants' request for judicial

■ In any event, neither argument has merit. While employee mobility and competition are undoubtedly issues of public interest when considered in the abstract, one could arguably identify a strong public interest in the vindication of any right for which there is a legal remedy. "The fact that 'a broad and amorphous public interest' can be connected to a specific dispute is not sufficient to meet the statutory requirements" of the anti-SLAPP statute. (*Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1280 [55 Cal.Rptr.3d 544].) By focusing on society's general interest in the subject matter of the dispute instead of the specific speech or conduct upon which the complaint is based, defendants resort to the oft-rejected, so-called "synecdoche theory of public issue in the anti-SLAPP statute," where "[t]he part [is considered] synonymous with the greater whole." (*Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26, 34 [1 Cal.Rptr.3d 390] (*Commonwealth*).) In evaluating the first prong of the anti-SLAPP statute, we must focus on "the *specific nature of the speech* rather than the generalities that might be abstracted from it. [Citation.]" (*Ibid.*)

This rule has been recognized in a line of cases affirming the denial of anti-SLAPP motions, none of which are cited in defendants' opening brief. In *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913 [130 Cal.Rptr.2d 81] (*Rivero*), a union asserted that the publications giving rise to a public university employee's complaint for libel and slander involved an issue of public interest because "unlawful workplace activity is a matter of public interest particularly where it occurs at a publicly financed institution." (*Id.* at p. 919.) In rejecting that argument, the court reasoned "if the Union were correct, discussion of nearly every workplace dispute would qualify as a matter of public interest. We conclude, instead, that unlawful workplace activity below some threshold level of significance is not an issue of public *interest*, even though it implicates a public *policy*." (*Id.* at p. 924, italics added.)

In *Consumer Justice Center v. Trimedica International, Inc.* (2003) 107 Cal.App.4th 595 [132 Cal.Rptr.2d 191] (*Trimedica*), the maker of an herbal supplement for female breast enlargement sued for fraud and false advertising

---

notice of the legislative history of section 425.17, subdivision (c), because we need not decide whether the statute applies to any of WFG's claims. (See pt. II., *post.*) For the same reason, we deny defendants' request for judicial notice of a reply brief offered to demonstrate that our Supreme Court is currently deciding which party bears the burden of proving that a claim is exempt from the anti-SLAPP statute under section 425.17, subdivision (c). (See *Simpson Strong-Tie Co. Inc. v. Gore* (2008) 162 Cal.App.4th 737 [76 Cal.Rptr.3d 292], review granted July 30, 2008, S164174.)

claimed the action involved a public issue because herbal dietary supplements are a matter of public interest. The court disagreed: "Trimedica's speech is not about herbal supplements in general. It is commercial speech about the specific properties and efficacy of a particular product, Grobust. If we were to accept Trimedica's argument that we should examine the nature of the speech in terms of generalities instead of specifics, then nearly any claim could be sufficiently abstracted to fall within the anti-SLAPP statute." (*Id.* at p. 601.)

In *Commonwealth, supra,* 110 Cal.App.4th 26, a telemarketing firm and one of its employees were sued for soliciting a corporation's shareholders to purchase services purporting to protect them from investment scams. Analogizing the case to *Rivero* and *Trimedica,* the court reasoned: "Selling an herbal *breast enlargement* product is not a disquisition on alternative medicine. Lying about the supervisor of eight union workers is not singing one of those old Pete Seeger union songs (e.g., 'There Once Was a Union Maid'). And, in the case before us, hawking an investigatory service is not an economics lecture on the importance of information for efficient markets." (*Id.* at p. 34, italics added.) The court added that "the general importance of consumer information . . . does nothing to make the sales pitch here implicate an issue of public interest. Just because you are selling something that is intrinsically important does not mean that the public is interested in the fact that you are selling it." (*Ibid.,* citation omitted.)

In *Jewett v. Capital One Bank* (2003) 113 Cal.App.4th 805 [6 Cal.Rptr.3d 675] (*Jewett*), a financial institution was sued for credit card solicitations that allegedly constituted deceptive and unfair business practices. In reversing the grant of the defendant's anti-SLAPP motion, the court found "that the solicitations were designed solely for the purpose of commercial activity, and that to allow such solicitations the protection of section 425.16 by virtue of the fact that they touch upon matters of general public interest would eviscerate the unfair business practices laws." (*Id.* at p. 815.)

Finally, in *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90 [15 Cal.Rptr.3d 215] (*Mann*), a corporation engaged in the business of maintaining water systems was sued for allegedly soliciting a competitor's customers by falsely claiming the competitor was using and dumping toxic illegal chemicals. In affirming denial of the defendant's anti-SLAPP motion, the court concluded that "[a]lthough pollution can affect large numbers of people and is a matter of general public interest," the statements giving rise to the plaintiff's claims "were not about pollution or potential public health and

safety issues in general, but about [the plaintiff's] specific business practices." (*Id.* at p. 111.)

■ Defendants' attempt to frame the subject of their communications as involving "the pursuit of lawful employment pursuant to Bus. & Prof. § 16600" and "workforce mobility and free competition" is similarly infirm. Though couched in noble language, defendants' communications were not "about" these broad topics, nor were they designed to inform the public of an issue of public interest. They were merely solicitations of a competitor's employees and customers undertaken for the sole purpose of furthering a business interest. While we do not dispute that employee mobility and competition are issues of public interest and importance, "the focus of the anti-SLAPP statute must be on the specific nature of the speech rather than on generalities that might be abstracted from it. [Citation.]" (*Mann, supra,* 120 Cal.App.4th at p. 111.) Otherwise, every case alleging the breach of a noncompetition agreement or the related misappropriation of trade secrets would be categorically subject to the anti-SLAPP statute. Applying the statute in this manner would effectively "eviscerate the unfair business practices laws," a result the Legislature plainly did not intend. (*Jewett, supra,* 113 Cal.App.4th at p. 815.) As Salvatore Tessio said to Tom Hagen, "Tell Mike it was only business."[8] So it is here.

■ Defendants' attempt to focus on the specific content of their speech for the first time on appeal is equally unavailing. The particular statements defendants identify are derived from the flyer and PowerPoint presentation that James and Jeff Crawford forwarded to WFG associates as part of their effort to recruit those associates to join HBW. According to defendants, information in these materials "mirrored ongoing public discussions about WFG, including criticism of its restrictive associate agreements, the fact that recruiting is required for promotions, WFG's claim that it owns associate clients, and the fact that WFG's products are coming under scrutiny by the Financial Industry Regulatory Authority . . . ." Defendants ignore, however, that these communications were not made in the context of any public discussion. "[I]n order to satisfy the public issue/issue of public interest requirement in situations where the issue is of interest only to a limited, but definable portion of the public, such as a private group, organization, or community, 'the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it

---

[8] The Godfather (Paramount Pictures 1972).

warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance.' [Citation.]" (*Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 738 [87 Cal.Rptr.3d 347].)

The documents at issue here were not disseminated in the context of any purported ongoing controversy regarding WFG's business practices, nor were they directed at encouraging others to participate in the discussion. (See *Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 119 [1 Cal.Rptr.3d 501] [postings on labor union's Web site disclosing that union's business manager had been terminated for financial impropriety did not involve an issue of public interest as contemplated by the anti-SLAPP statute because postings did not seek to encourage public debate or discussion on the matter].) Rather, the information was part of a competitor's pitch to WFG associates, and was motivated solely by the competitor's desire to increase its sales ranks. Because the information was contained in solicitations that were designed solely for the purpose of commercial activity, it is not entitled to protection under the anti-SLAPP statute. (*Jewett, supra*, 113 Cal.App.4th at p. 815.)

Defendants' briefs are replete with citations to cases in which the anti-SLAPP statute was found to apply where the statement or conduct at issue (1) was about a person or entity in the public eye (e.g., *Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337 [63 Cal.Rptr.3d 798]); (2) involved conduct that could affect large numbers of people beyond the direct participants (e.g., *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468 [102 Cal.Rptr.2d 205]); or (3) involved a topic of widespread public interest (e.g., *Integrated Healthcare Holdings, Inc. v. Fitzgibbons* (2006) 140 Cal.App.4th 515 [44 Cal.Rptr.3d 517]). Defendants fail, however, to persuade us that the specific speech at issue here falls under any of these categories. The fact that WFG is, as defendants put it, "a large, powerful corporation" does not render all information about the company a matter of widespread public interest. Defendants also fail to explain how WFG's compensation structure and the other information directed at convincing its competitor's associates to switch jobs would have any effect on a substantial number of people beyond those to whom the information was directly conveyed. In short the allegations, if proved, render this case not about protected activity but unprotected duplicity.

■ Even if defendants could establish that the specific statements they identify in the Crawfords' flyer and PowerPoint presentations qualify as protected speech, they would still fail to satisfy their burden of proof on the

first prong of the anti-SLAPP statute because those statements were merely incidental to the conduct giving rise to WFG's complaint. "A cause of action is subject to a motion to strike under the anti-SLAPP statute even if it is based only in part on allegations regarding protected activity. [Citation.] However, 'it is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute.' [Citation.]" (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 653 [24 Cal.Rptr.3d 619].)

The allegations giving rise to the complaint are essentially as follows: (1) the contracting defendants used WFG's confidential information and trade secrets to solicit WFG associates to join HBW and to induce WFG customers to replace WFG products or services, all in violation of the AMA; and (2) HBW and the Crawfords aided and abetted the contracting defendants and wrongfully induced other WFG associates to violate the terms of the AMA. The statements for which defendants seek protection, i.e., specific references in the flyer and PowerPoint presentations that accompanied the Crawfords' solicitations of WFG associates, are irrelevant to all of WFG's claims against the contracting defendants. Those statements, which relate to specific aspects of WFG's business practices, are also essentially irrelevant to the claims against HBW and the Crawfords. WFG is not suing defendants for criticizing their business practices. As defendants acknowledged below, "Plaintiff is not challenging the content of the statements made but rather the very fact such communications occurred . . . ." Because the statements at issue are merely incidental to WFG's claims, they are insufficient to subject any cause of action, much less the entire complaint, to the anti-SLAPP law. (*Thomas v. Quintero, supra*, 126 Cal.App.4th at p. 653.)

II.

### Section 425.17, Subdivision (c)

WFG contends that section 425.17, subdivision (c), provides an independent basis for upholding the denial of defendants' motion because defendants made statements to WFG associates and clients in order to benefit their competing business. Because we conclude that the complaint does not arise from protected activity, we need not decide whether any of WFG's claims are exempt from the anti-SLAPP statute under subdivision (c) of section 425.17. (*Mann, supra*, 120 Cal.App.4th at p. 112.)

## DISPOSITION

The order denying defendants' motion to strike the complaint pursuant to section 425.16 is affirmed. WFG shall recover costs on appeal.

Gilbert, P. J., and Yegan, J., concurred.

On May 7, 2009, the opinion was modified to read as printed above.