Filed 8/2/16  Schelske v. TMZ Productions CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CRAIG L. SCHELSKE, | B262173 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC560648) |
| v. | |
| TMZ PRODUCTIONS, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Michael L. Stern, Judge.  Affirmed.

R. Rex Parris Law Firm, R. Rex Parris, Jason P. Fowler, John M. Bickford, and Sean J. Lowe for Plaintiff and Appellant.

Caldwell Leslie & Proctor, Linda M. Burrow, Arwen R. Johnson, and Amy E. Pomerantz for Defendants and Respondents.

_____

Following a television broadcast of allegations regarding a high profile divorce, plaintiff and appellant Craig L. Schelske filed a defamation action against defendants and respondents TMZ Productions, Inc. (TMZ), Ehm Productions, Inc., and Harvey Levin (defendants). Defendants responded by filing a special motion to strike plaintiff's complaint pursuant to Code of Civil Procedure section 425.16,[1] California's anti-SLAPP[2] statute. The trial court granted defendants' motion, and plaintiff appeals.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Factual Background*

A. <u>Plaintiff's marriage, divorce, and activities as a public figure</u>

Plaintiff was married to country music star Sara Evans (Evans) from 1993 to 2006. While they were married, plaintiff "manag[ed] pretty much everything regarding [Evans's] career" and "was involved each and every day, from dawn until sunset, in every aspect of [Evans's] career." (Bolding omitted.) During the same time, plaintiff served as executive director of a "social, political organization called American Destiny," which plaintiff described as "an educational organization that was attempting to facilitate the political philosophy behind the founding fathers and their viewpoints and what they believed." (Bolding omitted.)

In 2002, plaintiff ran for Congress in the Republican primary for Oregon's Fifth District. Although he was defeated, he remained involved in Republican politics, serving as a member of the Steering Committee for Reelection of President George W. Bush in 2004 and acting as chairman of Craig Pac, which plaintiff described as "a national political action committee dedicated to electing Republicans at the federal and state

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] SLAPP is an acronym for strategic lawsuit against public participation. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 813, overruled in part on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5.)

level." Plaintiff even used his political contacts to formulate "a huge comprehensive plan" to "influence people to vote for [Evans]" when she appeared on the popular television show *Dancing with the Stars*. (Bolding omitted.)

Evans filed for divorce in October 2006, alleging, among other things, that plaintiff had engaged in "copious use of porn, rampant adultery and verbal abuse." In her divorce complaint, Evans accused plaintiff of storing on his cell phone "at least 100 photographs of [himself] posing with his erect penis" and "several photographs showing [him] having sex with other women."

Shortly after his divorce was finalized, plaintiff sued Evans's divorce attorney, John J. Hollins, Sr. (Hollins), for slander. Hollins and plaintiff eventually settled, with the following statement from Hollins: "My firm and I represented Sara Evans in a highly contested divorce from Craig Schelske. I represented Sara Evans to the best of my ability. I regret that my actions on behalf of Sara Evans caused Mr. Schelske harm in any way." Plaintiff's representatives released a statement following Hollins's statement.

Meanwhile, plaintiff intentionally remained in the public eye. In 2008 or 2009, plaintiff met with a movie producer who wanted to tell plaintiff's story (about his divorce and subsequent lawsuit against Hollins). At another time, he met with Lions Gate Entertainment and others to talk about a film about his "divorce, the corruption, the intrigues, conspiracy. All of it. [¶] . . . [¶] . . . I wanted my story to be useful to help others through such a difficult time in their life, and to bring attention to the [L]egislatures and federal government for the need for legislative oversight over judges, and the need for reform in regards to family law." (Bolding omitted.)

Moreover, in 2009, plaintiff spoke to a group of approximately 60 people as part of a panel about fathers' rights. In June 2011, plaintiff gave an online interview about his divorce experience with Dadsdivorce.com. Later that year, he appeared on Anderson

Cooper's nationally syndicated talk show, claiming that he lost custody of his children because Evans falsely accused him of being a porn-obsessed adulterer.[3]

In 2014, plaintiff was interviewed as part of a segment on "HuffPost Live," titled "Why Does Divorce Take So Long and Cost So Much?" In that interview, plaintiff alleged corruption in family court and discussed his "very public divorce," describing it as "'read[ing] like a John Grisham novel.'" He mentioned his forthcoming book.[4] And, he promoted the interview on his Twitter page.[5]

B. *TMZ on TV*

TMZ investigates and reports on issues relating primarily to entertainment, sports, and business celebrities. Since 2007, TMZ has produced a television show, *TMZ on TV*, which provides viewers with tongue-in-cheek reporting on the latest celebrity news and information.

TMZ has published several stories about plaintiff's divorce since Evans first filed her complaint in 2006. On June 17, 2014, TMZ ran a story on TMZ.com about plaintiff's bankruptcy filing. That story was also part of a segment that aired on *TMZ on TV* the same day, during which TMZ correspondent Shevonne Sullivan (Sullivan) remarked that Evans divorced plaintiff after finding "'a hundred photographs of himself having sex with other people'" on his phone.

---

[3] After that appearance, Evans obtained a restraining order preventing plaintiff from making any further statements about their divorce proceedings.

[4] Plaintiff testified in unrelated litigation that he had written a manuscript that he intended to publish.

[5] Plaintiff joined Twitter in 2011 and he identifies himself as an "[a]uthor, speaker, and advocate for the family." On his Facebook page, he characterizes himself as a "Public Figure."

*Procedural Background*

Four months later, plaintiff filed the instant lawsuit for defamation and false light. His claims are based upon Sullivan's statement that plaintiff "'took a hundred photographs of himself having sex with other people'" and defendants' suggestion that they had the photographs in their possession. According to plaintiff, this broadcast left "viewers with the unmistakable belief" that plaintiff had been unfaithful while married to Evans and that "Evans had discovered his infidelity when she found a hundred photographs of him having sex with other people."

In response, defendants filed an anti-SLAPP motion. They argued that plaintiff's claims arose from protected speech and that plaintiff could not demonstrate a probability of prevailing on his claims. After all, according to defendants, plaintiff is a public figure who could not establish actual malice.

Plaintiff opposed the anti-SLAPP motion, contending that defendants could not show that plaintiff's divorce was a matter of public controversy. Alternatively, plaintiff is not a public figure. Even if he were, he could show that defendants published its statements with actual malice.

After entertaining oral argument, the trial court granted defendants' anti-SLAPP motion. It found that defendants met their initial burden of establishing that plaintiff's claims fell within the scope of section 425.16, subdivision (e). Moreover, plaintiff is a public figure who failed to prove actual malice. Therefore, he did not establish a probability of prevailing on his claims.

Plaintiff's complaint was stricken, and this timely appeal ensued.

## DISCUSSION

*I. Standard of review*

"We review the trial court's rulings on a SLAPP motion independently under a de novo standard of review. [Citation.]" (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929.)

5

## II. The anti-SLAPP statute

Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." The statute "posits . . . a two-step process for determining whether an action is a SLAPP." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.)

First, the defendant bringing the special motion to strike must make a prima facie showing that the anti-SLAPP statute applies to the claims that are the subject of the motion. (*Wilcox v. Superior Court*, *supra*, 27 Cal.App.4th at p. 819.) In other words, the moving defendant must show that his or her acts arose from protected activity. These acts include "oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" or "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e); see also *Jewett v. Capital One Bank* (2003) 113 Cal.App.4th 805, 811 (*Jewett*).)

Once a moving defendant has met its burden, the motion will be granted (and the claims stricken) unless the court determines that the plaintiff has established a probability of prevailing on the claim. (*DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 567–568.)

In order to establish a probability of prevailing, a plaintiff must *substantiate* each element of the alleged cause of action through competent, admissible evidence. (*DuPont Merck Pharmaceutical Co. v. Superior Court*, *supra*, 78 Cal.App.4th at p. 568; see also *Navellier v. Sletten*, *supra*, 29 Cal.4th at pp. 88–89 [reiterating that "'the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited"'"].) "This requirement has been interpreted to mean that (1) when the trial court examines the plaintiff's affidavits filed in support of the

6

plaintiff's *second step* burden, the court must consider whether the plaintiff has presented sufficient evidence to establish a prima facie case on his causes of action, and (2) when the trial court considers the defendant's opposing affidavits, the court cannot weigh them against the plaintiff's affidavits, but must only decide whether the defendant's affidavits, as a matter of law, defeat the plaintiff's supporting evidence." (*Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 184.) Only if he fails to meet this burden, was the motion properly granted. (*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1188–1189.)

Section 425.16 "shall be construed broadly." (§ 425.16, subd. (a).)

### III. The trial court properly granted defendants' anti-SLAPP motion

#### A. Public Interest

Applying the foregoing principles, we first determine whether plaintiff's claims fall within the scope of the anti-SLAPP statute.

Certainly, the alleged defamation occurred in a public forum, namely a "widely disseminated television broadcast." (*Metabolife Int'l v. Wornick* (S.D.Cal. 1999) 72 F.Supp.2d 1160, 1165, affd. in part and revd. in part on other grounds in *Metabolife Int'l v. Wornick* (9th Cir. 2001) 264 F.3d 832.)

Moreover, the statement at issue concerned a matter of public interest. There are "three general categories of cases [that fall] under the 'connection with the public issue' prong. A public issue is implicated if the subject of the statement or activity underlying the claim (1) was a person or entity in the public eye; (2) could affect large numbers of people beyond the direct participants; or (3) involved a topic of widespread, public interest." (*Jewett*, *supra*, 113 Cal.App.4th at pp. 813–814; see also *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924.)

Here, a public issue was implicated because plaintiff was in the public eye and his divorce was a matter of public interest. While plaintiff contends that his personal life (his alleged cheating) does not concern a public issue, the record shows otherwise—the public was widely interested in plaintiff's divorce from Evans (*Nygard, Inc. v. Uusi-Kerttula*

7

(2008) 159 Cal.App.4th 1027, 1042) and plaintiff took steps to keep the circumstances surrounding and following his divorce in the public eye (*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 808).

For these reasons, plaintiff's reliance upon *Time, Inc. v. Firestone* (1976) 424 U.S. 448 is misplaced. In that case, the Supreme Court "held that the divorce of an extremely wealthy person did not in and of itself constitute a public controversy sufficient to cast the [divorcée] as a public figure." (*Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 239.) In contrast, as detailed above, plaintiff deliberately maintained a public image, thereby thrusting the circumstances surrounding his divorce into the realm of public interest.

B. <u>Probability of Prevailing</u>

Having determined that plaintiff's claims fall within the scope of section 425.16, subdivision (e), we turn to the question of whether plaintiff demonstrated a probability of prevailing on his defamation and false light causes of action.

"Defamation requires the intentional publication of a false statement of fact that has a natural tendency to injure the plaintiff's reputation or that causes special damage." (*Burrill v. Nair* (2013) 217 Cal.App.4th 357, 383.) In addition, "[a] public figure suing for defamation 'must demonstrate "actual malice" by clear and convincing evidence.' [Citation.]" (*Burrill v. Nair*, *supra*, at p. 389.)

1. *Public Figure*

We must first consider whether plaintiff is a public figure. Whether plaintiff in a defamation action is a public figure is a question of law that we review de novo. We review the trial court's resolution of any disputed factual question bearing on the public figure determination under the substantial evidence standard. (*Khawar v. Globe Internat., Inc.* (1998) 19 Cal.4th 254, 264 (*Khawar*).)

There are two types of public figures. "'The first is the "all purpose" public figure who has "achieve[d] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." The second category is that of the "limited purpose" or "vortex" public figure, an individual who "voluntarily injects himself or is drawn into a

8

particular public controversy and thereby becomes a public figure for a limited range of issues.”’” (*Sipple v. Foundation for Nat. Progress*, *supra*, 71 Cal.App.4th at p. 247.)

“[A limited] ‘public figure’ plaintiff must have undertaken some *voluntary* act through which he seeks to influence the resolution of the public issues involved. . . . [¶] . . . [W]hen called upon to make a determination of public figure status, courts should look for evidence of affirmative actions by which purported ‘public figures’ have thrust themselves into the forefront of particular public controversies. . . . [S]uch a determination is often a close question which can only be resolved by considering the totality of the circumstances which comprise each individual controversy.” (*Reader’s Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 254–255, fn. omitted; see also *Gertz v. Robert Welch* (1974) 418 U.S. 323, 352 [“It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual’s participation in the particular controversy giving rise to the defamation”].) “It is not necessary to show that a plaintiff actually achieves prominence in the public debate; it is sufficient that ‘[a plaintiff] attempts to thrust himself into the public eye’ [citation] or to influence a public decision. [Citation.]” (*Copp v. Paxton* (1996) 45 Cal.App.4th 829, 845–846.)

Here, plaintiff repeatedly injected himself into the public eye on issues related to his divorce. He wrote a book that he sought to have published. He met with at least one producer and one production company to have a film made to tell his story. He gave an interview on HuffPost Live. He gave an interview on Dadsdivorce.com. He appeared on Anderson Cooper’s nationally syndicated show. And, he publicized his lawsuit and subsequent settlement with Hollins. Taken together, these facts establish that plaintiff was a public figure for purposes of his defamation action.

### 2. *Malice*

We next consider whether plaintiff has shown actual malice, an essential element of his defamation action.

“Actual malice ‘requires a showing that the allegedly false statement was made “with knowledge that it was false or with reckless disregard of whether it was false or

9

not." [Citation.] The reckless disregard standard requires a "high degree of awareness of . . . probable falsity . . . ." [Citation.]' [Citation.] 'The question is not "'whether a reasonably prudent [person] would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.'" [Citation.]' [Citation.]" (*Burrill v. Nair*, *supra*, at p. 389.)

TMZ's report, that Evans had found "a hundred photographs of [plaintiff] having sex with other people" captured the "gist" of the allegations in Evans's divorce complaint that there were at least 100 photographs of plaintiff posing with his erect penis and several photographs of him having sex with other women. As such, defendants could not have made the on-air statement with malice. (See, e.g., *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 28; *Gantry Constr. Co. v. American Pipe & Constr. Co.* (1975) 49 Cal.App.3d 186, 194.)

Plaintiff also asserts that defendants entertained serious doubts regarding the truth of their claim that plaintiff took 100 photographs of himself cheating on Evans; therefore, defendants had a duty to investigate. (See, e.g., *Khawar*, *supra*, 19 Cal.4th at p. 276 [there is a duty to investigate when there were obvious reasons to doubt the accuracy of the claim].) But plaintiff offers no evidence to support his supposition regarding defendants' alleged doubts. In fact, the evidence shows otherwise—Sullivan declared that at the time she made the on-air statement, she "genuinely believed it was true, and that it accurately reflected the allegations in . . . Evans's complaint for divorce." Similarly, plaintiff claims that "[t]here [was] plainly a duty to investigate a divorce complaint" since they "generally lack[] credibility." But, the "'mere failure to investigate the truthfulness of a statement, even when a reasonably prudent person would have done so, is insufficient' to demonstrate actual malice." (*Christian Research Institute v. Alnor* (2007) 148 Cal.App.4th 71, 90; see also *Beilenson v. Superior Court* (1996) 44 Cal.App.4th 944, 952 [failure to investigate does not in itself establish malice].)

10

## DISPOSITION

The order granting defendants' anti-SLAPP motion is affirmed.  Defendants are entitled to costs and attorney fees on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
                    ASHMANN-GERST


We concur:


_____, P. J.
         BOREN


_____, J.
         CHAVEZ

11