Filed 8/7/15  Mohamed v. Soliman CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MAHA MOHAMED, | B256434 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC479575) |
| v. | |
| MOUNIR A. SOLIMAN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Yvette M. Palazuelos, Judge.  Affirmed.

Dicaro, Coppo & Popcke, Carlo Coppo, Michael R. Popcke and Shelley A. Carder for Defendant and Appellant.

Vakili & Leus, Sa'id Vakili, John A. Schlaff and Jason C. Ming for Plaintiff and Respondent.

Defendant Mounir A. Soliman, M.D., (defendant) appeals the trial court's denial of his special motion to strike (Code Civ. Pro., § 425.16)[1] plaintiff Maha Mohamed's (plaintiff) First Amended Complaint.[2] Defendant, a psychiatrist, was a friend of plaintiff and her husband. Although he was not her doctor, in 2004, defendant wrote a letter to plaintiff's psychiatrist in Egypt containing a suggested treatment for plaintiff's alleged mental illness. Seven years later, in 2011, plaintiff's husband used this letter against her in child custody proceedings. Defendant moved to strike the First Amended Complaint (Complaint), principally alleging that his letter to the Egyptian doctor constituted a "peer-to-peer" communication, and thus was a matter of public interest under section 425.16, subdivision (e)(4). The trial court concluded the letter concerned a purely private matter of plaintiff's treatment for an alleged mental illness, and thus defendant could not establish a protected communication, and denied the motion. We affirm because simply labeling as "peer-to-peer" a communication between two physicians concerning a single patient on a private matter does not elevate that communication to protected speech. The defendant did not make the requisite showing the Complaint is subject to the anti-SLAPP statute. The letter did not concern a "public issue" and was not protected speech. (See § 425.16, subds. (b)(1) & (e)(4).)

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

1. *Allegations of Plaintiff's First Amended Complaint*

    a. *Plaintiff's psychiatric commitment in Egypt*

In August 1990, plaintiff married Tarek Ezzat (Tarek) in Egypt; shortly thereafter, they emigrated to the United States. They have two children, born in 1995 and 1998.

---

[1]    All statutory references herein are to the Code of Civil Procedure.

[2]    The Regents of the University of California, who were also named as defendants, are not a party to this appeal.

Defendant is a board-certified psychiatrist and has been employed at the University of San Diego (University) since 1998. Currently, defendant is the Chief of Clinical Affairs and Associate Professor of Psychiatry.

Defendant is also from Egypt, having emigrated to the United States in 1998. In 1990, defendant and plaintiff became personally acquainted. Over the years, plaintiff and her family and defendant and his family regularly socialized. At the time he emigrated, defendant had difficulty getting his professional credentials in the United States, and Tarek assisted him in that regard.

During the summer of 1999, plaintiff and Tarek experienced marital problems. Tarek moved out of the marital home for a brief period of time. Plaintiff and Tarek contacted defendant to arrange a consultation. Later, Tarek moved back into the marital home and reconciled with plaintiff.

In 2004, plaintiff, Tarek, and their children relocated back to Egypt. In late August 2004, plaintiff threatened to leave Tarek and move back to the United States. Plaintiff alleges Tarek perceived her threats as a sign of mental illness, and enlisted the help of defendant and plaintiff's older brother to concoct a scheme whereby plaintiff would be committed to a psychiatric hospital.

Dr. Adel Sadek, a psychiatrist practicing in Egypt, was the founder of the private Psychological Medicine Hospital (PM Hospital) in Cairo, Egypt. Plaintiff alleges defendant spoke to Dr. Sadek to convince Dr. Sadek plaintiff should be involuntarily committed to PM Hospital. On August 30, 2004, plaintiff was forcibility committed against her will to PM Hospital.

In September 2004, Dr. Sadek contacted defendant, and requested information regarding plaintiff's condition. Although he was not her psychiatrist, defendant provided information concerning his diagnosis and suggested treatment of plaintiff. Defendant asked if Dr. Sadek would participate in a "peer-to-peer" event at the University in the near future, to which Dr. Sadek agreed to do grand rounds.

3

Sometime later that month, defendant received a phone call from PM Hospital stating Dr. Sadek had died and his records were incomplete. Defendant claims he obtained plaintiff's consent to write a letter to plaintiff's then current attending physician, Dr. Mona El-Sheikh, setting forth the substance of defendant's communication with Dr. Sadek. That letter is the subject matter of this litigation.

The letter states: "I am writing to you in regards to the psychiatric care of [plaintiff]. I would like to give you an overview of the case and keep you informed of my last conversation with Dr. Adel Sadek. There are some elements that might have direct implications on the pathogenesis of her illness, namely, an impoverished and abandoned childhood, due to the divorce of her parents and being raised by her aunt. There is a history of abuse at age ten and family history of psychiatric illness (brother). Significant psychiatric symptoms and personality disorder started to manifest in the late 20s. She has been under psychiatric treatment on and off since the mid 1990s. She has been treated with Risperidone, Fluphen[a]zine, [Clonazepam] and Flu[o]x[e]tine. It was noted that she has a history of poor compliance with treatment, due to the lack of insight about her illness. With the presence of psychotic symptoms, chronic persecutory paranoia, unwarranted suspicion, hypersensitivity, jealousy, rigidity, excessive self-importance and a tendency to blame and ascribe evil motives to others. Also, she is overconscientious, overdutiful and unable to relax. The diagnosis according to the DSM-IV would be delusional disorder, paranoid personality disorder and obsessive compulsive personality disorder. My treatment plan that was discussed with Dr. [Sadek] is to adjust the Risperidone dose up to 5 mg/day and to add Fluphen[a]zine 12.5 mg/every 2 weeks (injection). The psychotherapy would be an imporant aspect to improve her insight about her illness and to increase compliance with medication."

Plaintiff alleged that as a result of defendant's letter, she remained at PM Hospital until September 28, 2004, when Tarek arranged for her release.

4

b. *Plaintiff's marital dissolution proceedings*

In December 2009, plaintiff, Tarek, and their children relocated back to the United States. Plaintiff believes that in November 2010, Tarek made arrangements to get a copy of defendant's September 20, 2004 letter to use in connection with their pending divorce proceedings. Plaintiff discovered the letter in mid-March 2011.

In May 2011, plaintiff filed a petition for custody and support. In August 2011, in connection with her marital dissolution proceedings, plaintiff subpoenaed defendant to testify at a deposition. At the custody trial, Tarek offered defendant's September 20, 2004 letter as evidence of plaintiff's mental illness in order to gain leverage in their child custody dispute.

At the custody hearing, the family law court stated, "When I read [the September 20, 2004] letter, I had the opinion that Dr. Soliman was a treating physician, [and] that Dr. Soliman had personal knowledge of [plaintiff's] alleged mental illness," but the court concluded that because Dr. Soliman was not plaintiff's treating physician, "the letter from Dr. Soliman isn't worth the paper it's written on as far as being any kind of an evaluation, diagnosis, prognosis, or anything else with regard to [plaintiff's] alleged mental illness. [¶] There is not one bit of other evidence that [plaintiff] was ever examined for mental illness . . . . " Further, the court found Tarek had "manipulated the children into believing [plaintiff] was mentally ill" and concluded that there was no credible evidence that plaintiff was under the care of a psychiatrist or psychologist before her involuntary commitment in 2004.

2. *Defendant's Special Motion to Strike*

Plaintiff's Complaint stated claims against defendant and the University for breach of fiduciary duty, false imprisonment, defamation, invasion of privacy, intentional infliction of emotional distress, assault, battery, negligent infliction of emotional distress, and unfair business practices. Plaintiff sought compensatory and punitive damages.

On January 28, 2013, defendant moved to strike plaintiff's Complaint pursuant to section 425.16, subdivision (e)(4), arguing that his statements to Dr. Sadek were made in a "peer-to-peer" context and were in connection with an issue of public interest, namely, promotion of the University as a partner and provider of innovative patient care, cutting edge research, and advanced education. The communications were inextricably intertwined with this goal and because they led to Dr. Sadek's acceptance of defendant's invitation to do grand rounds at the University, although they concerned only one patient, constituted "peer-to-peer" communications. Dr. Sadek died within a few weeks of his conversation with defendant and did not do grand rounds at the University. In spite of the fact the letter was written approximately seven years prior to the child custody litigation, defendant argues that because the letter was used in the subsequent family law proceedings, the letter constituted a communication made in connection with an official proceeding under section 425.16, subdivision (e)(1) and (2).

Lewis L. Judd, M.D., submitted a declaration in support of defendant's motion in which he stated one method doctors use to promote the professional relationships necessary to facilitate clinical research are "peer-to-peer" relationships. Defendant had built numerous professional relationships in the Arab world. In Dr. Judd's opinion, defendant's letter constituted a "peer-to-peer" communication that fell within the course and scope of defendant's employment at the University. Similarly, James B. Lohr, M.D., also submitted an expert declaration stating that defendant had built relationships with psychiatrists and other healthcare professionals in the Arab world and has collaborated with and provided advice to various health systems and individual providers in Egypt, Saudi Arabia, Kuwait, the United Arab Emirates, China, Malaysia, India, and Lybia.

Plaintiff's opposition filed February 28, 2014, asserted that the communications at issue were not "peer-to-peer" communications but instead were private communications made as a family friend at the request of Dr. Sadek.[3] Plaintiff argued that in fact,

---

[3] In response to defendant's special motion to strike, plaintiff filed a motion for sanctions under Code of Civil Procedure section 128.7 against defendant and his counsel.

6

defendant admitted in his deposition in connection with the child custody dispute that "peer-to-peer" was not the purpose of the communication. Furthermore, plaintiff asserted defendant had taken inconsistent positions in depositions, at first testifying that "peer-to-peer" had nothing to do with the September 20, 2004 letter, yet in a later deposition in connection with this action, characterized his letter as merely a "peer-to-peer" communication. Pursuant to section 425.16, subdivision (c), plaintiff sought attorneys' fees under section 128.5 on the basis defendant's motion was frivolous or solely intended to cause delay.

### a. *September 2, 2011 deposition testimony in connection with plaintiff's child custody dispute*

Defendant did not mention "peer-to-peer" communications at this deposition, but testified that his 2004 discussion with Dr. Sadek was "mainly as a friend who happened to be a psychiatrist."

### b. *May 31, 2013 deposition testimony in connection with defendant's motion to strike*

At this deposition, defendant for the first time argued his letter was "peer-to-peer," because in addition to plaintiff's individual care, Dr. Sadek inquired about the University's Department of Psychiatry, the research being done at the University, and the type of clinical care being offered in the United States.

Brian P. Jacks, M.D., provided an expert declaration in support of plaintiff's opposition. Dr. Jacks found defendant's definition of "peer-to-peer" communications inaccurate because according to defendant, virtually any communication between doctors

---

Plaintiff argued that defendant's special motion to strike lacked merit because defendant's recitation of the facts was a "manifest confabulation" and defendant changed his testimony in deposition. Plaintiff sought sanctions in excess of $84,000 based upon the change in defendant's testimony. The trial court denied the motion because plaintiff did not comply with the safe harbor provisions of section 128.7.

would constitute "peer-to-peer" communication, regardless of whether such communications are formal, informal, or involve patients or former patients. According to Dr. Jacks, "peer-to-peer consultation" is a term of art that means a non-promotional communication between doctors, often in different specialties or subspecialties, in which doctors discuss either differing approaches to certain general kinds of medical issues, or one doctor gives another doctor an outsider's perspective on treating a particular patient. Thus, by definition, a non-treating doctor's communication about someone that doctor personally knows is not "peer-to-peer" and blurs the boundaries between social and professional relationships. Further, defendant's recommendations in the letter involved him directly in plaintiff's care, and the provision of such specific recommendations would not have been in a "peer-to-peer" communication.

In reply, defendant attempted to explain the contradictions in his testimony as follows: At the first deposition in the child custody proceedings, his employer instructed him not to answer any questions and not to involve his "peer-to-peer" activity unless directly asked.

At the hearing on the motion, the trial court observed, "I am sure the peer-to-peer program exists. I think at the time [defendant] was communicating [with Dr. Sadek] that he wasn't engaging in this peer-to-peer communication. It was really a personal contact. He's doing a personal favor because he said so himself." The trial court found that plaintiff's action did not arise from protected activity because defendant's letter did not concern a matter of public interest. Rather, the letter was written not as a treating physician but as a family friend "who happened to be a psychiatrist." Moreover, defendant's contradictory deposition testimony indicated he did not view the communication with Dr. Sadek to be part of his "peer-to-peer" duties at the University. Rather, defendant was trying to assist a family friend. Finally, the letter had not been written in anticipation of litigation (plaintiff's family law proceedings) because the letter was written seven years before such proceedings commenced. The trial court did not rule on plaintiff's section 128.5 request for attorneys' fees, although it denied plaintiff's

8

motion for sanctions under section 128.7.  The trial court denied the special motion to strike.

## DISCUSSION

Defendant contends his letter constituted a matter of public interest as a "peer-to-peer" communication between doctors, was a communication made in a judicial proceeding (plaintiff's child custody proceeding), and was not exempt from the application of the anti-SLAPP statute as commercial speech.  (§§ 425.16, subd. (e)(1), (2) & (4), 425.17.)  Plaintiff argues that defendant's shifting deposition testimony undermines his credibility whether the letter was a "peer-to-peer" communication and moreover, it was a purely private matter.

## I.    The Anti-SLAPP Statute

Section 425.16, subdivision (b)(1) states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  The court must engage in a two-step process when determining a special motion to strike.  First, the moving party must make a threshold prima facie showing that the challenged cause of action is one "arising from" the moving party's actions in furtherance of the right of petition or free speech.  (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477; *Flatley v. Mauro* (2006) 39 Cal.4th 299, 314; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).)  Second, if the court finds such a showing has been made, the burden shifts to plaintiff to establish a probability of prevailing on the merits.  (*Episcopal Church Cases, supra*, 45 Cal.4th at p. 477; *Flatley v. Mauro, supra,* 39 Cal.4th at p. 314; *Equilon, supra*, 29 Cal.4th at p. 67.)

The first prong analysis depends upon conduct enumerated in section 425.16, subdivision (e). Section 425.16, subdivision (e) states: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734; *D'Arrigo Bros. of California v. United Farmworkers of America* (2014) 224 Cal.App.4th 790, 799.) Discussing the first prong, our Supreme Court explained: "[T]he statutory phrase, 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech. [Citation.] . . . . [T]he critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech. [Citations.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e) . . . .'" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78; accord *Animal Legal Defense Fund v. LT Napa Partners LLC* (2015) 234 Cal.App.4th 1270, 1277.)

In determining whether a cause of action arises from any act in furtherance of the right of petition or free speech, we look at "'the gravamen or principle thrust'" of the action. (*Episcopal Church Cases, supra*, 45 Cal.4th at p. 477; *Optional Capital, Inc. v. DAS Corp.* (2014) 222 Cal.App.4th 1388, 1399; *Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 269.) Our Supreme Court has stated: "The anti-SLAPP statute's

10

definitional focus is not on the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92; accord, *Episcopal Church Cases, supra*, 45 Cal.4th at p. 477.)

Here, the causes of action do not arise from any act in furtherance of defendants' right of free speech in connection with an issue of public interest.

## A. Issue of Public Interest

In arguing that the September 20, 2004 letter constituted a communication that concerned the public interest, defendant relies on the "peer-to-peer" program at the University. As such, he contends the "peer-to-peer" program is a matter of public interest because it impacts a broad segment of society, promotes the expertise of the University, and furthers the standards of practice in Egypt; thus, his friendship with the plaintiff did not negate the fundamental "peer-to-peer" nature of the letter.

Relevant here, subdivision (e) of section 425.16 delineates the type of speech or petitioning activity protected. Such acts include "any . . . conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) The definition of "public interest" within the meaning of section 425.16 includes not only governmental matters, but also private conduct that affects a broad segment of society or affects a community in a manner similar to that of a governmental entity. (*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 479.)

In general, "[a] public issue is implicated if the subject of the statement or activity underlying the claim (1) was a person or entity in the public eye; (2) could affect large numbers of people beyond the direct participants; or (3) involved a topic of widespread, public interest." (*Jewett v. Capital One Bank* (2003) 113 Cal.App.4th 805, 814; accord, *World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc*. (2009) 172 Cal.App.4th 1561, 1573.) Where the issue of interest is to a limited, but definable portion

of the public, the protected activity must, at a minimum, "'occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance.'" (*Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 738, italics in original; accord, *World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc., supra*, 172 Cal.App.4th at pp. 1572–1573.) A "collateral or incidental allusion[] to protected activity will not trigger application of section 425.16." (*Trilogy at Glen Ivy Maintenance Assn. v. Shea Homes* (2015) 235 Cal.App.4th 361, 368.)

We review de novo the trial court's ruling on a special motion to strike. (*Flatley v. Mauro, supra*, 39 Cal.4th at pp. 325-326; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.) In determining the special motion to strike, "The court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); *Flatley v. Mauro, supra,* 39 Cal.4th at p. 326; *Soukup v. Law Offices of Herbert Hafif, supra,* 39 Cal.4th at p. 269, fn. 3.) But as explained by our Supreme Court, we do not weigh the competing evidence: "'[W]e neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by plaintiff as a matter of law." [Citation.]'" (*Flatley v. Mauro, supra*, 39 Cal.4th at p. 326; *Soukup v. Law Offices of Herbert Hafif, supra,* 39 Cal.4th p. 269, fn. 3; accord, *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)

Additionally, where the defendant's evidence is internally contradictory, as it is here, and we are prohibited from weighing that evidence, the defendant cannot make a sufficient showing of protected speech. (*D.C. v R.R.* (2010) 182 Cal.App.4th 1190, 1223.)

Here, even assuming that "peer-to-peer" communications can merit protection as matters of public concern, defendant's letter did not constitute a "peer-to-peer" communication. Dr. Sadek did not seek defendant's opinion because he was asking the

medical community at large for some input on how to treat plaintiff's condition, as would be the basis of a "peer-to-peer" communication; rather, Dr. Sadek contacted defendant because he was a psychiatrist and family friend who could provide specific input on plaintiff's condition. Thus, as Dr. Jacks observed, defendant acted more as a treating physician in communicating both with Dr. Sadek and later in writing to Dr. Sheikh. Neither the fact that defendant regularly engaged in "peer-to-peer" communication in Arab countries, or the fact that he invited Dr. Sadek to do grand rounds at the University as a result of the communication, changes this result. In the context of Dr. Sadek's request to defendant, the nature and circumstances of plaintiff's treatment did not interest a large group of people, such as doctors treating her type of purported illness. Rather, it was a matter of private concern between Dr. Sadek, defendant, plaintiff and her family. Finally, given the conflict in defendant's own testimony at deposition concerning the basis of the communications—on an issue where he bore the burden of establishing a protected communication—the trial court properly concluded that it could not resolve the issue in defendant's favor. We reach the same conclusion.

### B. Communications in Connection with a Judicial Proceeding

Defendant also contends the letter was used in connection with a judicial proceeding and thus deserves protection under section 425.16, subdivision (e)(1) and (2). The contention is meritless. He further contends there was no evidence that plaintiff was damaged in the custody proceeding by the letter, as the court found no evidence of mental illness.

The anti-SLAPP statute defines acts in furtherance of First Amendment free speech and petition rights to include: Any written or oral statement or writing made before a legislative, executive, or judicial proceeding (§ 425.16, subd. (e)(1)); and any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body (§ 425.16, subd. (e)(2)). As explained in *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, a

defendant making a motion to strike under section 425.16, subdivision (e)(1) and (2) need not separately demonstrate that the statement concerned an issue of public significance because in crafting the statute, the Legislature equated a public issue with the authorized official proceeding to which it connects. (*Id.* at p. 1116; see also *Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 236–237.)

Under section 425.16, subdivision (e)(1), the letter did not constitute a statement that was *made before* a judicial proceeding. Rather, the letter was communicated in the context of a medical consultation and was not part of any judicial proceeding until it was offered years later as evidence of plaintiff's psychiatric commitment/condition.

Further, the letter did not constitute a statement made in anticipation of litigation under section 425.16, subdivision (e)(2). A statement falls within section 425.16, subdivision (e)(2) if the statement concerns the subject of the dispute and is made in anticipation of litigation contemplated in good faith and under serious consideration. (*Aguilar v. Goldstein* (2012) 207 Cal.App.4th 1152, 1162.) The "good faith" and "serious consideration" requirements do not relate to malice; rather, they insure that hollow threats of litigation are not protected. (*People ex rel. Fire Insurance Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 824.) Here, defendant's September 20, 2004 letter was not made in anticipation of litigation. At the time the letter was written, there was no litigation on the horizon. Indeed, the letter was specifically designed to assist Dr. Sheikh with plaintiff's medical treatment.

### C. Commercial Speech, Section 425.17

Next, defendant argues his communication was not commercial speech and therefore was not within the exception of section 425.17.[4] Under section 425.17, if an

---

[4] The trial court did not base its ruling on section 425.17. However, plaintiff raised the issue of the applicability of section 425.17, subdivision (b) in a footnote in her motion for sanctions, contending her claim for unfair business practices (presumably Bus. & Prof. Code, § 17500) and other unspecified causes of action of the complaint were

14

action is prosecuted "solely in the public interest" or against "a person primarily engaged in the business of selling or leasing goods or services" who makes statements about those goods and services, the action is not subject to the provisions of section 425.16 as a SLAPP suit.  (§ 425.17, subd. (c).)

"The Legislature enacted section 425.17 . . . to address a 'disturbing abuse' in litigants' use of the anti-SLAPP statute.  (§ 425.17, subd. (a).)"  (*Mann v. Quality Old Time Service, Inc*. (2004) 120 Cal.App.4th 90, 112.)  To address these abuses, section 425.17 excludes certain types of claims that would otherwise have fallen under the scope of the anti-SLAPP law.  Subdivision (c) of section 425.17 carves out an exception to the anti-SLAPP statute for commercial speech.

In *Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, the court addressed the issue of whether a lawyer could be considered to be "primarily engaged in the business of selling or leasing goods or services" under section 425.17, subdivision (c). The court found that although lawyers were not "categorically excluded from the commercial speech exemption to the anti-SLAPP statute," in the case before it the conduct in question (statements made in connection with client poaching) did not constitute commercial speech.  *Taheri* concluded that when a lawyer's conduct includes advice to a client on pending litigation, it did not fall within the statutory exemption of the anti-SLAPP statute because such speech was more than commercial speech and to find otherwise would conflict with a client's fundamental right of access to the courts. (*Id.* at pp. 490–492.)  The same reasoning applies here—to find a claim based upon a doctor's medical advice to another doctor regarding a patient was exempt as commercial speech would undermine unfettered access to medical services.

---

exempt from a motion to strike.  Defendant addresses the issue in his Opening Brief, and plaintiff responded in her Respondent's Brief.

**D. Attorneys' Fees/Sanctions.**

Although plaintiff did not separately appeal the trial court's failure to rule on her request for attorneys' fees as a sanction under section 128.5 as provided for pursuant to section 425.16, subdivision (c), she requests that we sanction defendant pursuant to section 128.5.  This issue is not cognizable on appeal due to plaintiff's failure to separately appeal the issue.  (*In re Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439.)

**II.     Conclusion.**

In conclusion, because defendant did not satisfy his burden to show the letter constituted protected speech under the first step of the anti-SLAPP analysis, we do not consider whether plaintiff demonstrated a probability of prevailing on the merits of her claims.  (See *City of Cotati v. Cashman, supra,* 29 Cal.4th at pp. 80–81.)

**DISPOSITION**

The order of the superior court is affirmed.  Respondent is to recover her costs on appeal.

KIRSCHNER, J.[*]

We Concur:

TURNER, P.J.

KRIEGLER, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.