Filed 4/28/22  Goens v. Monsef CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOSHUA GOENS,<br><br>        Plaintiff,<br><br>    v.<br><br>REZA MONSEF,<br><br>        Defendant. | D079618<br><br><br>(Super. Ct. No. 37-2019-00052868-CU-BC-CTL) |
| REZA MONSEF,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JOSHUA GOENS,<br><br>        Defendant and Appellant. | (Super. Ct. No. 37-2019-00053318-CU-FR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Jeffrey B. Barton, Judge.  Affirmed.

Kelly E. DuFord for Plaintiff, Defendant and Appellant.

Christian J. Albut for Defendant, Plaintiff and Respondent.

Reza Monsef entered into a lease with Joshua Goens for certain commercial property. Subsequently, Monsef and Goens disagreed regarding what was promised under the lease, including whether Monsef was to operate a car dealership on the entire property. Goens began the eviction process to remove Monsef from the property. In response, Monsef told Goens that he would bring a civil suit if Goens proceeded with an unlawful detainer action. Four days after Goens filed an unlawful detainer action, Monsef sued Goens, alleging, among other things, that Goens made certain misrepresentations during the negotiation of the lease.

In response to Monsef's complaint, Goens brought a special motion to strike the complaint under the anti-SLAPP (Strategic Lawsuit Against Public Participation) statute, Code of Civil Procedure section 425.16.[1] The court denied the motion, finding the complaint was not based on Goens's right to petition the court or bring an unlawful detainer action.

Goens appeals the court's order denying his anti-SLAPP motion, arguing the court erred in determining that the complaint was not subject to the anti-SLAPP statute.

We agree with the superior court that Goens did not show the complaint arose out of protected activity. We therefore affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

The Underlying Complaint

Monsef, doing business as La Mesa Pre-owned/RN Motors, Inc., is an automotive dealer who purchases and sells motor vehicles. In early August 2019, Monsef saw an advertisement on Craigslist regarding certain real

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise specified.

2

property located on Mission Gorge Road in San Diego (the Premises).  The advertisement stated the entire Premises was for lease.  Monsef's representative then emailed Goens to request additional information.

After receiving no response to the email, Monsef went to Goens's office to discuss leasing the Premises.  At that time, Goens and Monsef did not walk through the Premises.  Goens informed Monsef that the rent for the Premises would be $5,000 per month.

Goens then requested and Monsef provided financial information.  Goens "approved [Monsef] within minutes" and told him to return the next day to sign the lease.

The next day, Monsef signed a lease agreement (Lease) for the Premises.  Per the Lease, Monsef was only entitled to use the " 'Front Portion' " of the Premises.  Monsef did not have an opportunity to adequately review the Lease before executing it.  Monsef "was forced to sign the Lease under duress."  He asked for a day to review the Lease, but Goens told him that other parties were interested in the Premises and the Premises would not be available for rent the next day.  However, Goens assured Monsef that " 'everything was in order' " and " 'there was no need to worry.' "

Before signing the Lease, Monsef was led to believe, based on the Craigslist advertisement, that he would be entitled to use the entire Premises.  He also believed that Goens owned the Premises.  Monsef was not aware that Goens was a tenant under a master lease of the Premises.

Before and after he signed the Lease, Goens promised Monsef that everything would be ready for Monsef to move into the Premises on August 15, 2019.  Specifically, Goens told Monsef the Premises would be

3

repainted and the signage from the prior tenant would be removed or unplugged. Nevertheless, the Premises was not ready when Monsef's client moved vehicles onto the Premises on August 15, 2019.

Monsef placed his signage over the signage of the prior tenant. However, at night, the prior tenant's signage would "show[ ] through [Monsef's] signage" because Goens had not turned off the lighting of the previous tenant's sign.

Also, Monsef had to share the Premises with another tenant. During the day, "an unlicensed body shop" operated and painted vehicles on the Premises. The body shop's activities caused "a major interruption to [Monsef's] business operations." Monsef informed Goens of the situation, but Goens did nothing about it.

Goens and Monsef agreed there would be a chain link fence and two locks on the Premises. However, the pole that would support the fence "was run over and destroyed." On his security cameras, Monsef observed strangers driving through the car lot at night. Monsef brought this situation to Goens's attention, but Goens did not remedy it.

In a letter dated September 3, 2019, Goens informed Monsef that Monsef would receive a $300 credit for October rent because the Premises was not ready. The next day, Monsef sent a letter to Goens requesting a copy of the master lease. Shortly thereafter, Goens refused to provide any rental credits to Monsef, including the previously promised $300.

Goens threatened to file an unlawful detainer against Monsef.

On October 8, 2019, Monsef filed suit against Goens, alleging the following causes of action: (1) intentional misrepresentation; (2) negligent misrepresentation; (3) rescission and restitution; (4) unjust enrichment/constructive trust; (5) declaratory relief; and (6) injunctive relief.

4

The gravamen for Monsef's claims focused on Goens's misrepresentations to Monsef during the Lease negotiations, especially Monsef's claim that Goens represented that Monsef would be able to use the entire Premises.

The Anti-SLAPP Motion

In response to the Monsef's complaint, Goens filed an anti-SLAPP motion. In that motion, Goens claimed that Monsef sued him "in retaliation of" an unlawful detainer action Goens filed against Monsef.[2] To this end, Goens argued that Monsef breached the Lease, and thus, Goens sent Monsef a letter to vacate the Premises on September 13, 2019. On September 20, 2019, after Monsef did not cure the breaches under the Lease, Goens sent Monsef a notice to vacate the Premises in three days. In response, Monsef's attorney sent a Goens a letter dated October 2, 2019, threatening to bring a civil action if Goens filed an unlawful detainer action.

In insisting that the underlying complaint was subject to an anti-SLAPP motion, Goens did not evaluate any of the individual causes of action in the complaint or explain how those claims were based on protected conduct. Instead, Goens argued that Monsef "filed a civil lawsuit against [Goens], in furtherance of his threat to do so upon [Goens's] valid exercise of evicting [Montel]. In his own words and subsequent actions, [Monsef's] attorney admits that this current lawsuit is one meant to chill [Goens's] right to evict a tenant for failure to perform under the lease."

Monsef opposed the anti-SLAPP motion, contending the causes of action in the underlying complaint did not arise out of any protected activity. Specifically, he maintained his claims arose out of misrepresentations Goens made during the negotiation and signing of the Lease.

---

[2]    Goens filed the unlawful detainer action on October 4, 2019, four days before Monsef filed the underlying complaint.

5

Goens filed a reply in support of his anti-SLAPP motion.

After considering the papers filed and the evidence submitted as well as entertaining oral argument, the superior court denied the anti-SLAPP motion. The court explained:

> "[Goens] contends . . . Monsef filed this action to chill his First Amendment right to petition and broadly asserts that this action arises from [Goens's] filing of an unlawful detainer action against [Monsef]. However, the mere fact that this action was filed a few days after [Goens's] unlawful detainer action was filed does not bring it within the scope of the anti-SLAPP statute. (See *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [(*Navellier*)].) [Monsef's] fraud based claims in this action are not based on [Goens's] right to petition the court or bring an unlawful detainer action. The Complaint only mentions in passing that [Goens] "has threaten[ed] to file an unlawful detainer against" [Monsef]. [Citation.] There are no other references to the unlawful detainer action in the Complaint. Instead, the Complaint's factual assertions stem from [Goens'] alleged representations to [Monsef] during the negotiation of the lease and leading up to its execution. [Citation.] [Goens] has not met his burden to demonstrate [Monsef's] Complaint or any of the causes of action therein arise from protected activity. Accordingly, the court did not consider the second prong of the anti-SLAPP analysis, whether [Monsef] has a probability of prevailing on his claims."

Goens timely filed a notice of appeal.

## DISCUSSION

### A. Law Governing Anti-SLAPP Motions

"Enacted by the Legislature in 1992, the anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right

6

of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883-884 (*Wilson*).)

"A court evaluates an anti-SLAPP motion in two steps. 'Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least "minimal merit." ' [Citation.] If the plaintiff fails to meet that burden, the court will strike the claim." (*Wilson*, *supra*, 7 Cal.5th at p. 884.)

"The defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' [Citation.] To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] Courts then must evaluate whether the defendant has shown any of these actions fall within one or more of the four categories of ' "act[s]" ' protected by the anti-SLAPP statute." (*Wilson*, *supra*, 7 Cal.5th at p. 884.)

The second step of the anti-SLAPP analysis has been described as a summary-judgment-like procedure. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940 (*Sweetwater Union*).) The court determines whether " 'the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable

7

judgment.' " (*Ibid*.) The plaintiff " 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' " (*Ibid*.) The defendant may submit evidence in support of its motion. (*1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 585.) However, " '[t]he court does not weigh evidence or resolve conflicting factual claims.' " (*Sweetwater Union*, at p. 940.) Rather, the court " 'accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] "[C]laims with the requisite minimal merit may proceed." ' " (*Ibid*.)

We review an order granting an anti-SLAPP motion de novo. (*Sweetwater Union*, *supra*, 6 Cal.5th at p. 940.) We therefore engage in the same two-step process that the trial court undertakes in assessing an anti-SLAPP motion. (See *Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1651-1652.) "Only a [claim] that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier*, *supra*, 29 Cal.4th at p. 89.)

B. Prong One: Protected Activity under the Anti-SLAPP Statute

Goens contends that the superior court erred in concluding Monsef's causes of action do not arise from protected activity, as defined by the anti-SLAPP statute. We disagree.

A defendant satisfies the first prong of the anti-SLAPP analysis by demonstrating that the allegedly injurious conduct falls within one of four categories of protected activity described in section 425.16, subdivision (e), and that the claim asserted by the plaintiff arises from that conduct. (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620.) Alternatively stated, "the moving party must establish both (1) that its act constituted

8

protected activity and (2) the opposing party's cause of action arose from that protected activity." (*Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 130.)

Section 425.16, subdivision (e) states: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

"A claim does not arise from constitutionally protected activity simply because it is triggered by such activity or is filed after it occurs. [Citation.] Rather, the focus is on the substance of the lawsuit. '[T]he critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech.' " (*World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1568 (*World Financial Group*).)

Goens's primary argument here is that Monsef filed his compliant in response to Goens's filing of the unlawful detainer action. "There is no question that the prosecution of an unlawful detainer action is indisputably protected activity within the meaning of section of section 426.16." (*Clark v.*

9

*Mazgani* (2009) 170 Cal.App.4th 1281, 1286.)  However, Monsef's complaint is not premised on Goens's protected activities of initiating and prosecuting an unlawful detainer action.  Instead, Monsef is suing Goens based on alleged misrepresentations that Goens made during the negotiations of the Lease.  And Goens does not explain how these alleged misrepresentations are protected activity under the anti-SLAPP statute.  Instead, he merely asserts that Monsef threatened to file his complaint if Goens filed an unlawful detainer action and then followed through on that threat once the unlawful detainer action was initiated.  Yet, neither that timeline nor the act of filing suit automatically trigger anti-SLAPP protections.  " '[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' " (*Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 160, quoting *Navellier, supra*, 29 Cal.4th at p. 89.)  The pivotal question " 'is whether the cause of action is based on the defendant's protected free speech or petitioning activity.' " (*Ibid*.)

Here, Goens provides no analysis whatsoever of any of Monsef's causes of actions.  He does not explain how claims based on alleged misrepresentations he made during the negotiations and execution of the Lease constitute protected activity.  This failure is fatal to his appeal here.

"The burden of affirmatively demonstrating error is on the appellant." (*Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.)  Here, Goens has utterly failed to explain how the allegations in the underlying complaint were based on an act in furtherance of his right of petition or free speech.  (See *Navellier, supra*, 29 Cal.4th at p. 89; *World Financial Group, supra*, 172 Cal.App.4th at p. 1568.)  Thus, he has not carried his burden of showing the superior court erred in finding Monsef's

complaint did not arise out of protected activity.  Because we conclude Goens has not satisfied the first prong under the applicable anti-SLAPP analysis, we do not reach the anti-SLAPP statute's secondary question whether Monsef established there is a probability that he will prevail on his claims.  (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80-81.)

DISPOSITION

The order is affirmed.  Monsef is entitled to his costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


AARON, J.


DATO, J.