Filed 1/20/26  LA Organic Pharmacy v. Flowers CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LA ORGANIC PHARMACY, INC.,<br><br>    Cross-complainant and Appellant,<br><br>    v.<br><br>CHELSEA FLOWERS,<br><br>    Cross-defendant and Respondent. | B340803<br>(Los Angeles County Super. Ct. No. 22STCV11431) |

APPEAL from an order of the Superior Court of Los Angeles County, Lynne M. Hobbs, Judge. Reversed and remanded.

Weinberg Gonser and Jordan Matthews for Cross-complainant and Appellant.

Kent Legal and Jonathan D. Kent for Cross-defendant and Respondent.

Cross-complainant and appellant LA Organic Pharmacy, Inc., doing business as Mecca Mid City (appellant) appeals from the order granting cross-defendant and respondent Chelsea Flowers's (respondent) special motion to strike pursuant to Code of Civil Procedure section 425.16 (anti-SLAPP motion).[1] Appellant contends the statements respondent posted on social media were not made in connection with an issue of public interest. Finding merit to that position, we reverse and remand.

## BACKGROUND

**Respondent's employment and lawsuit**

Respondent worked since November 2016 as a sales representative and a general laborer for appellant, a company operating a small cannabis dispensary Mecca Mid City (Mecca). Appellant's owner, manager, and chief executive officer, Noelle Byers-Frontz, directly supervised respondent during her employment. In February 2021, respondent resigned from her employment with appellant.

In April 2022, respondent filed a lawsuit against appellant, alleging a range of employment claims, including retaliation under Labor Code sections 98.6 and 1102.5, constructive wrongful termination, and various wage-and-hour claims. Respondent amended her complaint twice following multiple demurrers. The second amended complaint alleged among other matters there were substantial irregularities in respondent's wage statements, respondent never received annual tax documents from appellant, and respondent did not receive

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

2

payment of all wages, including overtime and meal and rest period premiums. Appellant allegedly retaliated against respondent when she complained about these issues. Respondent claimed she had no choice but to resign from her position due to retaliation, which included reducing respondent's hours and creating a hostile work environment.

**Appellant's cross-complaint**

In November 2023, appellant filed a cross-complaint against respondent, asserting a single cause of action for trade libel. The cross-complaint alleged, after respondent voluntarily left her employment with appellant in February 2021, she went on social media and published the following false statements:

"& IF YOU'RE BLACK DON'T EVEN BOTHER APPLYING OR IF THEY THINK YOU LOOK GHETTO DON'T EVEN BOTHER APPLYING. THEY WON'T HIRE YOU. I BELIEVE THE EXACT WORDS ARE 'THEY DON'T WANT DRAMA'"

Respondent allegedly tagged Mecca so that all of its followers could view the statements. The cross-complaint alleged the statements were false because Mecca was a female-owned and operated business that employed and worked with a diverse group of individuals and served a diverse range of customers. Appellant alleged respondent maliciously published the false statements during the COVID-19 pandemic in the height of a social justice movement in Los Angeles. The cross-complaint alleged, many businesses, including Mecca, showed their support for various social justice causes during this period. Appellant alleged Mecca was highly active on social media, which was the company's primary way to advertise and engage with its customers. Mecca allegedly suffered an immediate drop in revenue after respondent published the false statements.

**The anti-SLAPP motion**

In January 2024, respondent filed an anti-SLAPP motion to dismiss as to the cross-complaint. Respondent brought her motion under section 425.16, subdivision (e)(3) of the anti-SLAPP statute, contending the statements alleged in the cross-complaint were made on social media, a public forum, in connection with an issue of public interest. Respondent argued her statements raised the highly public issue of racial discrimination in hiring practices. Respondent maintained the cross-complaint's allegations indicated public interest on this topic was heightened at the time because the statements were posted in the context of the ongoing controversy concerning the Black Lives Matter movement.[2] Respondent asserted the cross-complaint's allegations showed her statements were intended to connect to the public conversation, as evinced by respondent tagging Mecca, who was highly active on social media, to attract the attention of its followers.

As to the second prong, respondent maintained appellant could not show a probability of prevailing on the merits of its trade libel claim because the statements disparaged appellant's hiring practices, not its products or property. Respondent posited the statements were not provably false and appellant could not show pecuniary harm since it also boasted of its success. In addition respondent contended the statute of limitations barred appellant's claim.

---

[2] Black Lives Matter is not expressly named in the cross-complaint; it is only referred to as "the social justice movement." But both parties assume, and the context of the allegations strongly suggests, the cross-complaint is referring to the Black Lives Matter movement or other similar social justice causes that were in the public spotlight during the COVID-19 pandemic.

In opposition, appellant argued respondent's statements were not protected because they did not seek to discuss an issue of public concern and were merely "to whip up a crowd for vengeful retribution." Appellant asserted Mecca was not "in the public eye" as it was a small, privately owned business with one brick-and-mortar operation in Los Angeles. Further, appellant maintained Mecca had limited brand awareness and no significant marketing budget, primarily marketing through social media platforms and online customer review Web sites. Appellant contends the statements did not refer to any social justice movement, and there was no discussion of the issue of racial discrimination.

As to the second prong, appellant posited the statements at issue disparaged Mecca's property because they criticized its business as a whole. Appellant asserted respondent's post contained statements of facts that were provably false because they were expressed in certain terms. Appellant also argued the evidence showed respondent's statements caused Mecca financial harm as the business incurred a loss of 789 orders and $43,913.82 in revenue immediately after the statements were made. Appellant further maintained its claim was not time-barred because the two-year limitations period was tolled when the complaint was filed.

On June 24, 2024, the trial court heard and granted the anti-SLAPP motion, finding respondent's statements were protected activity and appellant failed to make a prima facie showing of facts that it had a probability of prevailing on its trade libel claim. The court noted the statements were made on social media, a public forum. The court concluded the comments regarding Mecca's allegedly racist hiring practices had a direct

5

relationship to issues of racism, which had been held to undoubtedly be a public issue, and they were posted in the context of what appellant itself alleged was "an ongoing controversy, dispute or discussion" involving the social justice movement at the time. The court found appellant's reliance on *Woodhill Ventures, LLC v. Yang* (2021) 68 Cal.App.5th 624 (*Woodhill Ventures*) was misplaced because the nature of the public issue identified in that case was only tangentially related to the statements in question.

As to the second prong, the court determined appellant's claim was not time-barred but lacked evidence showing respondent knew her statements were false. The court explained appellant's evidence was not specific as to time and therefore was insufficient to show respondent's knowledge of her statements' falsity or that they were false when made.

**The motion for reconsideration**

In July 2024, appellant moved for reconsideration of the trial court's order granting the anti-SLAPP motion, contending respondent failed to provide notice she was contesting the element of scienter and did not argue the issue as to appellant's trade libel claim. Appellant indicated it was bringing the motion to provide timesheets showing respondent worked with numerous employees from diverse cultural backgrounds during her employment.

In opposition, respondent asserted appellant's explanation for failing to submit evidence had no merit because, as the anti-SLAPP motion expressly outlined, appellant had the burden of showing a probability of prevailing on its claim once the first prong was met. Respondent maintained the additional evidence was not new facts as appellant could have offered it in opposition

to the anti-SLAPP motion but failed to do so. Respondent posited the additional evidence was nevertheless insufficient to oppose the anti-SLAPP motion because appellant had not shown every element of its claim.

In August 2024, the trial court heard and denied the motion for reconsideration. The court found appellant failed to offer "new or different facts, circumstances, or law" under section 1008 because the additional evidence could have, with reasonable diligence, been presented in the underlying proceeding. The court explained it was appellant's burden to factually and legally substantiate its claim once respondent showed the claim arose from protected activity.

Appellant timely appealed.

## CONTENTIONS ON APPEAL

Appellant asserts two main arguments. First, appellant contends respondent's statements were not made in connection with a public issue because they did not concern an "entity in the public eye" and were merely intended to "whip up a crowd for vengeful retribution." Second, appellant argues it established a probability of prevailing on the merits of its single cause of action for trade libel, demonstrating respondent disparaged appellant's business as a whole with knowingly false statements and caused it financial harm.

## DISCUSSION

### I. Standard of review and applicable law

""""We review de novo a ruling on a special motion to strike under section 425.16. [Citation.] Thus, we apply our independent judgment, both to the issue of whether the cause of action arises

7

from a protected activity and whether the plaintiff has shown a probability of prevailing on the claim.""" (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671 (*Balla*).) "An appellant still bears the ' "burden of affirmatively demonstrating error.""" (*Ibid.*)

"In evaluating an anti-SLAPP motion, courts conduct a two-step analysis. First, the court decides whether a defendant has met its 'burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.'" (*Manlin v. Milner* (2022) 82 Cal.App.5th 1004, 1017–1018 (*Manlin*).) "For these purposes, protected activity 'includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.' (§ 425.16, subd. (e).)" (*Id.* at p. 1018.)

"Second, if a defendant meets its burden on the threshold showing, the court decides if the plaintiff 'has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).)" (*Manlin, supra*, 82 Cal.App.5th at p. 1018.) "To satisfy this burden, the plaintiff '"must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.""""

(*Ibid*.) "At the second step, the court's 'inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citations.] "[C]laims with the requisite minimal merit may proceed."'" (*Balla, supra*, 59 Cal.App.5th at p. 671.)

"'Analysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit. Instead, courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion.'" (*Manlin, supra*, 82 Cal.App.5th at p. 1018.) "'[T]o the extent any acts are unprotected, the claims based on those acts will survive.'" (*Ibid*.)

## II. Respondent's statements on social media were not made in connection with a public issue

### A. *The content and context of respondent's statements do not show they were matters of public interest*

Appellant argues the statements at issue were not made in connection with a public issue under section 425.16, subdivision (e)(3),[3] because Mecca was only a small business not "in the public eye" and its hiring practices were not a public matter.

---

[3] Statements protected by section 425.16, subdivision (e)(3) have been treated as within and subsumed by the later enacted, much broader subdivision (e)(4). (See *Carver v. Bonds* (2005) 135

"To fall within the scope of subdivision (e)(3) and (4) of the anti-SLAPP statute, a defendant must establish: (1) that the challenged statement or conduct implicates a public issue or a matter of public interest; and (2) that the speech or conduct was made 'in connection with' a public issue or a matter of public interest." (*Bernstein v. LaBeouf* (2019) 43 Cal.App.5th 15, 22 (*Bernstein*); see § 425.16, subd. (e)(3) & (4).) "[A] court must consider the context as well as the content of a statement in determining whether that statement furthers the exercise of constitutional speech rights in connection with a matter of public interest." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149 (*FilmOn*).)

In general, "'[a] public issue is implicated if the subject of the statement or activity underlying the claim (1) was a person or entity in the public eye; (2) could affect large numbers of people beyond the direct participants; or (3) involved a topic of widespread, public interest.'" (*D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1215 (*D.C.*); see *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621.) "As to the latter, it is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate." (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898.) "In evaluating the first prong of the anti-SLAPP statute, we must focus on 'the *specific nature of the speech* rather than the generalities that might be abstracted from it.'" (*World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1570.) "The fact that 'a broad and amorphous

Cal.App.4th 328, 342–343 [rejecting plaintiff's attempt to distinguish § 425.16, subd. (e)(3) from subd. (e)(4), noting subd. (e)(4) was enacted later to broaden the anti-SLAPP statute].)

10

public interest' can be connected to a specific dispute is not sufficient to meet the statutory requirements." (*Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1280.)

"'[T]o satisfy the public issue/issue of public interest requirement in situations where the issue is of interest only to a limited, but definable portion of the public, such as a private group, organization, or community, "the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in matters of public significance."'" (*D.C., supra*, 182 Cal.App.4th at p. 1215.)

As to the requirement that the speech or conduct be made "in connection with" the public interest issue, the California Supreme Court articulated a two-part test to determine this matter. (*FilmOn, supra,* 7 Cal.5th at p. 149.) "'First, we ask what "public issue or . . . issue of public interest" the speech in question implicates—a question we answer by looking to the content of the speech. [Citation.] Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest.' [Citation.] The second part of this test 'address[es] the specific nature of [the defendant's] speech and its relationship to the matters of public interest.'" (*Bernstein, supra*, 43 Cal.App.5th at p. 23.)

We recognize racial discrimination in employment practices is a topic of public interest. Nevertheless, on this record, we conclude respondent's statements did not concern that public interest issue under the anti-SLAPP statute because the statements were of limited scope, did not "'contribute to the public debate'" on that subject, and were not a part of an ongoing

broader public conversation. (*FilmOn, supra*, 7 Cal.5th at p. 150.) Respondent made no comments on the broader topic of racial discrimination in employment hiring practices. Respondent's statements were posted on a public forum,[4] but they only involved Mecca and specifically accused it of racist hiring practices against African-Americans. The statements were therefore limited in scope and did not convey a public issue without further information concerning Mecca and the circumstances in which the statements were made.

While the statements in question do not contribute to the public debate on a broader topic of widespread public interest, Mecca's employment practices could be of public interest if Mecca was "in the public eye" or was a large business affecting large numbers of people. (See *D.C., supra*, 182 Cal.App.4th at p. 1215.) But the evidence presented fails to show this. Instead Mecca was a small private cannabis dispensary with one physical location in the Mid-City neighborhood of Los Angeles. Mecca did not have a substantial marketing budget; it primarily advertised online through customer review Web sites and social media platforms. Mecca had limited brand awareness and no significant public platform. Respondent presented no evidence disputing these facts.

Accordingly, it can reasonably be concluded from the evidence that Mecca's reach and impact on the public was limited. There is no evidence Mecca ever received any prominent exposure or publicity in the news or other media that put it "in the public eye." Nothing shows Mecca had ever been in the public

---

[4]    "[A] publication does not become connected with an issue in the public interest simply because it is widely disseminated . . . ." (*Wilbanks v. Wolk, supra*, 121 Cal.App.4th at p. 900.)

spotlight when respondent posted the statements at issue. We therefore cannot conclude respondent's statements were protected under the anti-SLAPP statute based on Mecca's standing in the community.[5]

Finally, respondent's statements could nevertheless be protected despite their limited nature if they "'occur[ed] *in the context of* an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in matters of public significance.'" (See *D.C., supra*, 182 Cal.App.4th at p. 1215, italics added.) Here, respondent posted her statements in May 2021 during the height of attention on the Black Lives Matter movement. There is no evidence, however, the statements were made *in the context of* the Black Lives Matter movement or any other social justice causes in the public spotlight at the time. The fact respondent made her statements during the same period the movement dominated the media does not necessarily mean the statements were connected to ongoing discussions arising from the movement. Respondent's statements did not refer to Black

---

[5] Citing *Overhill Farms, Inc. v. Lopez* (2010) 190 Cal.App.4th 1248, the order granting the anti-SLAPP motion noted accusations of racial discrimination in employment decisions have elsewhere been held to constitute protected activity. However, *Overhill Farms* is inapposite. The first prong was not a disputed issue in that case. (See *id.* at pp. 1258–1259.) Further, *Overhill Farms* is distinguishable because the company in that case employed 1,000 employees and was publicly traded. (*Id.* at p. 1253.) Thus, a public issue was strongly implicated there because the company was "in the public eye" and the statements there could affect large numbers of people beyond the direct participants.

Lives Matter or any other social justice causes given public focus during that period. There is nothing showing Mecca's hiring practices were ever publicly highlighted due to the social justice movement at the time. There is nothing demonstrating respondent's statements were addressing an issue raised in Black Lives Matter or any other social justice causes receiving public attention during that period.

We note the Black Lives Matter movement came to prominence predicated on the issue of police brutality. (See *Black Lives Matter Los Angeles v. City of Los Angeles* (9th Cir. 2024) 113 F.4th 1249, 1253–1257.) While racial discrimination in employment practices may have been another issue raised in the movement, there are no facts showing respondent's statements were connected to discussions on such matters arising therefrom. Instead, respondent's statements appear to be more intended to personally attack Mecca rather than join the broader conversation on race.

In short, respondent's statements do not meet the first prong of the anti-SLAPP statute because they were limited to Mecca's allegedly racist hiring practices and did not further the discourse on any broader subject matter having widespread public interest or affecting large numbers of people.[6] Mecca was a

---

[6] Appellant also contends respondent's statements are not protected because they were only "aimed to whip up a crowd for vengeful retribution," similar to the facts in *Woodhill Ventures, supra*, 68 Cal.App.5th 624. However, *Woodhill Ventures* is not instructive here. *Woodhill Ventures* only involved a customer's complaint about a purchased birthday cake with icing shaped like medication pills, which had at most a tenuous link to the public issue of children confusing medication for candy, the "candy confusion" issue. (*Id*. at pp. 629–630, 632–633, 634.) The

small business with a limited public platform and was not "in the public eye." The statements at issue did not occur in the context of an ongoing controversy, dispute, or discussion because there is nothing showing the statements were connected to any ongoing discussions arising from the Black Lives Matter movement or other social justice causes in the public spotlight during that period. Given the limited nature of the statements in question, the protections of the anti-SLAPP statute do not apply. Since the first prong of the statute is not met, we need not address the second prong as to the probability of appellant prevailing on the merits of its trade libel claim. (See *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 ["Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute."].)

---

statements were held to be unprotected because they only had a "tangential relationship" to the asserted public issue. (*Id*. at pp. 632–633.) That is not the issue here because the relationship between respondent's statements and the issue of racism is not tangential; instead, the statements concerned a narrower issue involving Mecca's allegedly racist hiring practices. It cannot be broadly concluded from *Woodhill Ventures* that accusations of racism are necessarily unprotected under the anti-SLAPP statute. When such statements involve a party "in the public eye" or can impact many others beyond the direct participants, the speech could be protected. (See *D.C., supra*, 182 Cal.App.4th at p. 1215.) Regardless, respondent's statements here are unprotected based on the grounds discussed herein.

## DISPOSITION

The June 24, 2024 order granting the special motion to strike pursuant to section 425.16 is reversed. On remand, the trial court is directed to vacate June 24, 2024 order and enter a new order denying the anti-SLAPP motion. Appellant is awarded its costs on appeal.


CHAVEZ, Acting P. J.


We concur:


RICHARDSON, J.


SIGGINS, J.*

---

*       Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.